FILED

IN THE UNITED STATES DISTRICT COURT FEB 11 1999

FOR THE NORTHERN DISTRICT OF CALIFORNIA RICHARD W. WIEKING
                                        DISTRICT COURT
                                        NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BEVERLY NEHMER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES VETERANS ADMINISTRATION, et al.,<br><br>Defendants. | NO. C86-6160 TEH<br><br>CLASS ACTION<br><br>ORDER |

In 1989, this Court invalidated the United States Veteran Administration's regulation governing benefits for veterans exposed to Agent Orange during their service in Vietnam. The parties subsequently settled the remaining remedial issues, and in 1991, this Court incorporated this agreement into the final judgment. Plaintiffs contend, based on recently discovered information, that the Veterans Administration ("VA") is construing one aspect of the parties' settlement agreement too narrowly, and thus is improperly denying certain class members the full extent of retroactive benefits to which they are entitled. When the parties' efforts to informally resolve this dispute proved unsuccessful, plaintiffs filed the instant motion to enforce the judgment.

The matter came on for hearing on Monday, November 16, 1998. Having carefully considered the parties' oral and written arguments, and the entire record herein, the Court concludes, for the reasons set forth below, that plaintiffs' motion should be granted in part and denied in part consistent with this Order.

Federal Record Center
Accession Number 21-96-0022
Box Number 3-5
Location Number 1425060
From: US District Court, N. Dist. CA

United States District Court
For the Northern District of California

# BACKGROUND

In order to put the instant dispute in context, it is necessary to review the underlying litigation and our 1989 ruling. As explained in that ruling, the United States Armed Forces used Agent Orange, a chemical defoliant containing the toxic substance dioxin, to clear dense jungle land in Vietnam during the war. Many veterans believed that their exposure to Agent Orange, "'one of the mostly highly toxic substances known to the scientific community,'" *Nehmer v. U.S. Veterans' Admin.*, 712 F. Supp. 1404, 1407, n.1 (N.D. Cal. 1989)(citation omitted), caused them to contract several debilitating or deadly diseases. Many veterans (or their surviving kin) sought compensation from the VA, claiming that diseases they developed after service in Vietnam were related to their exposure to Agent Orange during military service. The VA, however, consistently took the position that only one disease--a skin condition called chloracne -- was associated with exposure to Agent Orange, and thus "routinely denied compensation for veterans who allege[d] that exposure to Agent Orange has caused diseases other than chloracne." *Id.* at 1407.

In response to the controversy over Agent Orange, Congress in 1984 enacted the Veterans' Dioxin and Radiation Exposure Compensation Standards Act ("the Dioxin Act"), Pub. L. 98-542 (HR 1961), 99 Stat. 2725, 98th Cong. 2d Sess., *reprinted in part at,* 38 U.S.C. § 1154 note. The Act "was passed amidst veterans' 'concern[s] about possible long-term health effects of exposure to herbicides containing dioxin' . . . as well as 'scientific and medical uncertainty' regarding the long-term health effects of Agent Orange exposure." *Id.* (citation omitted). The purpose of the Act was "to ensure that disability compensation is provided to veterans ' for all disabilities arising after [service in Vietnam] that are connected, based on sound scientific and medical evidence, to such service.'" *Id.* (citation omitted).

The Act authorized the VA to conduct rulemaking to determine which if any diseases, claimed to be associated with Agent Orange exposure, should be deemed "service connected." To this end, the VA was required to appoint an advisory committee which would study the medical and scientific evidence and make recommendations to the VA. The VA was then required to promulgate regulations identifying those diseases it deemed to be

2

United States District Court
For the Northern District of California

1  service connected, based on "sound scientific and medical evidence," *id.* at 1408.  Consistent

2  with the above, the VA issued a final regulation codified at 38 C.F.R. § 3.311a (1986).

3  Under subsection (b) of the regulation, veterans do not have to prove that they were exposed

4  to Agent Orange.  Rather, any veteran who served in Vietnam is automatically "presumed to

5  have been exposed to a herbicide containing dioxin." 38 C.F.R. § 3.311a(b).  Subsection (d),

6  however, reaffirmed the VA's earlier position that it would recognize only one disease--

7  chloracne-- as being sufficiently linked to Agent Orange to qualify as "service connected."

8  *Id.* at 1408.

9       In February 1987, plaintiffs filed this class action challenging 38 C.F.R. § 3.311a(d)

10  on a variety of grounds.  After considering the parties' cross-motions for summary judgment,

11  this Court, in May of 1989, (1) invalidated 38 C.F.R. § 3.311a(d), on the ground that the VA

12  had used too restrictive a standard to determine whether a disease is sufficiently linked to

13  Agent Orange to qualify as service connected[1], and (2) "void[ed] all benefit decisions made

14  under 38 C.F.R. § [3.]311[a](d)." *Nehmer*, 712 F. Supp. at 1409, 1416-18.

15       Two years later, in May of 1991, the parties agreed to a Final Stipulation and Order

16  ("Stip. & Order") which resolved the remaining issues of injunctive and monetary relief for

17  the class.  With respect to injunctive relief, the Stip. & Order set forth the VA's

18  responsibilities with regard to further rulemaking concerning Agent Orange.  As a result of

19  this rulemaking, the VA, between 1990 and 1996, found that a number of cancers are linked

20  to Agent Orange using the appropriate standard, and, as a result, they have been accorded

21  service connected status.[2]

22

23

24       [1]  Specifically, the Court found that the VA had improperly utilized the stricter
    standard of "proof of a causal relationship" when Congress had instead intended that the VA
25  "predicate service connection upon a finding of a significant statistical association between
    dioxin exposure and various diseases." *Nehmer*, 712 F. Supp. at 1420.
26

27

28       [2]  Specifically, the VA has found that the following cancers are service connected:

3

United States District Court
For the Northern District of California

1     With respect to monetary relief, the Stip. & Order requires the VA to reopen and

2 readjudicate previously denied claims that were voided by the Court's May 1989 order if and

3 when the VA issues new Agent Orange regulations service-connecting diseases other than

4 chloracne. Specifically, paragraph 3 of the Stip. & Order provides that:

5          As soon as a final rule is issued service connecting, based on dioxin [Agent
           Orange] , any of [certain specified diseases], and any other disease which may
6          be service connected in the future . . . the VA *shall promptly thereafter
           readjudicate all claims for any such disease which were voided by the Court's
7          Order of May 3, 1989* as well as adjudicate all similar claims filed subsequent
           to the Court's May 3, 1989 Order without waiting for final rules to be issued
8          on any other diseases.

9 Stip. & Order at ¶ 3.

10    Paragraph 5 then states that, for those cases which are readjudicated because the

11 earlier denial was "voided" by the Court's order, the "effective date" for disability

12 compensation shall be the date the voided claim was originally filed:

13         For any of [certain specified diseases], and any other disease which may be
           service connected in the future pursuant to paragraph 3 above, . . . [a]s to any
14         denials of claims which were voided as a result of the Court's May 3, 1989
           Order, the effective date for disability compensation or dependency and
15         indemnity compensation ("DIC"), if the claim is allowed upon readjudication
           pursuant to paragraph 3 and 4 above, will be the date the claim giving rise to
16         the voided decision was filed. . . .

17 Stip. & Order at ¶ 5.

18    The instant dispute concerns the scope of the VA's readjudication obligations under

19 paragraphs 3 and 5 of the Stip. & Order. As noted above, the VA, as a result of this action

20 and the newly applied standard, has found that a number of diseases, besides chloracne, are

21 ────────────────

22 non-Hodgkin's lymphoma, 55 Fed. Reg. 43,124 (Oct. 26, 1990), *codified at* 38 C.F.R. §
   3.313 (1997), soft-tissue sarcoma, 38 C.F.R. § 3.309(e), Hodgkin's disease, 59 Fed Reg.
23 5,106 (Feb. 3, 1994), multiple myeloma, lung cancer, cancer of the bronchus, cancer of the
   larynx, cancer of the trachea, 59 Fed. Reg. 29, 723 (June 9, 1994), and prostate cancer. 61
24 Fed. Reg. 57,586 (Nov. 7, 1996).   With respect to lung cancer, cancer of the bronchus or
   cancer of the trachea, the veteran must have developed the cancer to a disability level of 10%
25 or more within 30 years of the last date on which the veteran served in Vietnam. 38 C.F.R. §
   3.307(a)(6)(ii)(1997).
26         The VA has also service connected two non-cancer diseases: porphyria cutanea tarda
   (a liver disorder) and acute and subacute peripheral neuropathy. 38 C.F.R. §§ 3.307(a)(6),
27 3.309(e)(1997).  For a veteran to qualify for benefits due to Agent Orange exposure, based
   on these two diseases, the disease must have become manifest to a disability level of 10% or
28 more within one year of leaving Vietnam. *Id* at § 3.307(a)(6)(ii).

1  service connected based on their link to Agent Orange.  Thus, there are many class members

2  who, during the time period when the invalid regulation was in effect, filed a claim for

3  service-connected benefits based on a disease that the VA did not then recognize as linked to

4  Agent Orange -- but which the VA now recognizes is so linked pursuant to its revised Agent

5  Orange regulations.  Those claims were, of course, all denied at the time they were filed.

6          The VA has taken the position that ¶ 3 of the Stip. & Order does not require it to

7  readjudicate such claims unless (1) the claim specifically alleged that Agent Orange (or

8  herbicides) was a factor in the veteran's death or injury, or (2) the VA's denial of the

9  benefits expressly cited to 38 C.F.R. § 3.311a as grounds for the denial.  *See* VA

10 Adjudication Procedures Manual[3] M21-1, part VI, Change 52 (August 26, 1996), Section

11 7.20(d)(3), Stichman Decl., ¶ 5 and Exh. 26.  Plaintiffs counter that the Stip. & Order

12 requires the VA to readjudicate those claims in which the  disease causing death or injury is

13 later service connected under revised Agent Orange regulations, regardless of whether the

14 applicant (1) expressly referenced Agent Orange in his or her claim, or (2) the VA expressly

15 cited 38 C.F.R. § 3.311a in denying the claim.

16         The instant dispute arose when counsel for plaintiffs learned of the situation of two

17 class members, Rosa Aponte and Janet George, who first filed applications in 1985 and 1987

18 on behalf of deceased spouses who served in Vietnam.  Ms. Aponte's application for service-

19 connected death benefits asserted that her husband's cause of death was "due to service" but

20 did not expressly allege that Agent Orange or herbicides were a factor in his death.  The

21 cause of death was identified as lung cancer.  The VA denied her claim for death benefits on

22 the ground that the evidence did not show that the veteran's death resulted from his military

23 service.  The decision made no specific reference to 38 C.F.R. § 3.311a(d) --or any other

24 regulation.

25 —————————————————

26

27         [3] This manual is also referred to by plaintiffs as the Veterans Benefits Administration

28 Manual.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    In 1994, the VA recognized lung cancer as linked to Agent Orange, and Ms. Aponte

2    filed a second claim shortly thereafter which expressly asserted that her husband's death was

3    connected to Agent Orange.  The VA granted this claim and allowed benefits commencing

4    the first day of the month the second claim was filed (July 1, 1994).  The VA refused,

5    however, pursuant to their current policy, to readjudicate her original claim under the Stip. &

6    Order because Ms. Aponte could not show either that (1) her original application specifically

7    alleged that Agent Orange or herbicides were a factor in her husband's death, or (2) that the

8    VA's denial of her claim cited to 38 C.F.R. § 3.311a(d).  If the VA did readjudicate her

9    original claim, and she was found to qualify for benefits, then she would be entitled, under

10   paragraph 5 of the Stip. & Order, to benefits as of the date of her original application (July

11   29, 1985).  The facts pertaining to Ms. George are similar.

12   Plaintiffs now move to enforce the judgment arguing that the VA's readjudication

13   policy violates the Stip. & Order.[4]  Specifically, plaintiffs ask the Court to: (1) declare that

14   the VA's readjudication policy, as described above, violates paragraphs 3 and 5 of the Stip.

15   & Order, (2) order the VA to pay Aponte and George the retroactive benefits due them under

16   paragraph 5 of the Stip. & Order, and (3) permit plaintiffs to obtain discovery that will assist

17   them in identifying other class members that may be adversely affected by the VA's failure

18   to comply with its readjudication obligations under the Stip. & Order.

19

20

21

22   _____

23

24      [4]  As noted earlier, the final judgment in this action incorporated the terms of the Stip.
     & Order (as well as the Court's May 3, 1989 decision).  *See* Order of Oct. 9, 1991 at 1.  The
25   Court further stated that "this case shall be closed with the defendants subject to ongoing,
     enforceable obligations in the future."  As such, the Court retains jurisdiction to enforce the
26   Stip. & Order and address the instant motion. *See Kokkonen v. Guardian Life Ins. Co. of
     America,* 511 U.S. 375, 114 S. Ct. 1673, 1677 (1994)(where terms of settlement agreement
27   are incorporated into judgment court retains ancillary jurisdiction over claim of breach of the
     agreement).  Defendants do not dispute the Court's jurisdiction over plaintiffs' motion.

28

United States District Court
For the Northern District of California

# DISCUSSION

### A. Exhaustion of Administrative Remedies

The VA preliminarily argues that the Court should refrain from ruling on this motion until Aponte and George have fully exhausted their administrative remedies. Since there is no statute mandating exhaustion in this case, the decision whether to require exhaustion of administrative remedies is discretionary. *Nehmer v. U.S. Veterans' Admin*, 118 F.R.D. 113, 121 (N.D. Cal. 1987). Having reviewed the particular circumstances present here, it is evident that further exhaustion should not be required. First, as parties' papers reflect, resolution of the instant dispute largely turns on the proper interpretation of the Court's May 1989 decision -- an issue over which the VA has no particular expertise, and which is more properly presented to this Court. Second, any further exhaustion of administrative remedies would be futile given that the General Counsel of the VA has already resolved the issue adversely to plaintiffs, *see* VA O.G.C. Prec. Op. No.15-95 (June 2, 1996), 60 Fed. Reg. 43,187 (1996), Defs' Exh. C at 11, and this opinion is binding on the Board of Veterans' Appeals, the highest level of administrative review within the VA. *See* 38 U.S.C. §§ 311, 7104(c). Moreover, at least two class members have already exhausted their administrative remedies. *See* Pls' Exhs. 27 at 7, and 29 at 6. Thus, even were this Court to conclude that exhaustion is appropriate, it has already occurred. *Nehmer*, 118 F.R.D. at 121 (exhaustion by one class member is sufficient).

The VA nonetheless argues that further exhaustion should be required in light of the Veterans Judicial Review Act which created an administrative-judicial scheme for obtaining review of individual benefit decisions made by the VA. *See* 38 U.S.C. §§ 7104(a), 7252, 7292. It urges the Court to avoid "interfering" with this scheme by requiring Aponte and George to exhaust their administrative and judicial appeals up through at least the Court of Veterans Appeals, and possibly the Federal Circuit. Defendants ignore, however, that plaintiffs are not primarily seeking review of an individual benefit decision; rather, they are challenging an agency *policy* -- which happens to be illustrated by the individual cases of Aponte and George. Accordingly, judicial review of the issue raised by this motion, like

7

1  judicial review of the original issue underlying this case, does not run afoul of the Veterans

2  Judicial Review Act. *See Nehmer*, 118 F.R.D. at 123-24; *Nehmer*, 712 F. Supp. at 1410-11.

3      The VA also points to paragraph 4 of the Stip. & Order which provides that claims

4  will be "readjudicated with all of the procedural rights normally applicable to such VA

5  proceedings." The VA argues that this provision reinforces its argument that we should

6  defer acting until George and Aponte exhaust their administrative remedies by pursuing all of

7  their "procedural rights normally applicable to such VA proceedings." This argument is

8  meritless for two reasons. One, the VA has in fact refused to readjudicate their original

9  claims, so this provision does not even apply. Second, the plain function of paragraph 4 is to

10  ensure that claimants retain all of their procedural rights if a claim is readjudicated. It does

11  not deprive this Court of jurisdiction to enforce the Stip. & Order, as incorporated into the

12  final judgment.

13

14      B.  Whether the VA's Readjudication Policy Violates the Stip. & Order

15      As discussed above, the Stip. & Order requires the VA to readjudicate claims that

16  were voided by the Court's May 1989 Order. *See* Stip. & Order at ¶ 3 ("As soon as a final

17  rule is issued service connecting, based on dioxin [i.e. Agent Orange] . . , [any disease]. . .

18  the VA shall promptly thereafter readjudicate *all* claims for any such disease *which were*

19  *voided by the Court's Order of May 3, 1989*")(emphasis added). Thus the issue presented by

20  this motion, and upon which the parties disagree, boils down to which benefit decisions the

21  Court voided in its 1989 order. The Court's order on this point is quite brief. It simply

22  states that "We also void all benefit decisions *made under 38 C.F.R. §[3].311[a](d).*"

23  *Nehmer*, 712 F. Supp. at 1409 (emphasis added)..

24      A determination of which benefit decisions were voided by the Court thus turns on the

25  meaning of the phrase "made under 38 C.F.R. § 3.311a(d)." Under the VA's interpretation,

26  a decision was only "made under" 38 C.F.R. § 3.311a(d), and thus only voided by the

27  Court's order (and therefore only subject to readjudication), if, as described above, either (1)

28  the claimant specifically alleged in the application that Agent Orange or herbicides were a

United States District Court
For the Northern District of California

8

factor in the veteran's death, or (2) the VA's denial of the claim cited to 38 C.F.R. 3.311a(d)
as a basis for the decision.   The VA asserts that this approach is mandated by the "plain
language" of the Court's order since the VA can only be sure that a benefit decision was
"made under" 38 C.F.R. § 3.311a(d) if a claimant expressly asserted Agent Orange as a basis
for the benefits or the benefits were expressly denied under the regulation.

Clearly, the presence of either of these two factors would make it unmistakable that a
benefits decisions had been "made under" 38 C.F.R. § 3.311a(d).   However, as explained
below, the VA's position, that *only* claims in which one of these two factors is present were
"made under" 38 C.F.R. §3.311a(d), while perhaps superficially appealing and
administratively convenient, is overly formalistic and simplistic.  Rather, on closer
inspection, we agree with plaintiffs that the VA's approach is inconsistent with both the
spirit and intent of this Court's decision, as well as the liberal nature of the VA's own claims
process.

In striking down 38 C.F.R. §3.311a(d), this Court held that the VA had used an
unlawfully restrictive test in determining which diseases are linked to Agent Orange.  As a
necessary corollary, we also voided all benefit decisions "made under" the invalidated
regulation.  In granting this relief, the Court was clearly anticipating that the VA might in the
future issue valid Agent Orange regulations that would service connect additional diseases
besides chloracne.  In that event, the Court expected that the VA would revisit those benefit
decisions that had been erroneously decided under the invalidated regulation.  The order
voiding all benefit decisions "made under 38 C.F.R. § 3.3.11a(d)" was intended to facilitate
this remedial process.  The VA's narrow readjudication criteria, however, are inconsistent
with this intent because they have the effect of precluding the readjudication of claims that
were erroneously decided under the invalidated regulation.  This is because, as discussed
below,  a benefit decision could have been erroneously decided because of the flawed
regulation even if the claim did not expressly reference Agent Orange or the VA did not cite
to 38 C.F.R. § 3.311a(d) in its written denial.

United States District Court
For the Northern District of California

9

*United States District Court*
For the Northern District of California

1    *(i) Failure to expressly reference Agent Orange or Herbicides*

2        The failure of claimants, such as Aponte or George, to expressly reference Agent

3    Orange (or herbicides) is likely attributable to one of three circumstances. One, the claimant

4    was aware of 38 C.F.R. § 3.311a(d), and thus knew it was a futile gesture to mention Agent

5    Orange if the disease at issue was not chloracne. Second, the claimant did not know that the

6    disease was linked to Agent Orange or that the veteran was exposed to Agent Orange. In

7    such cases, the claimant would have no reason to expressly reference Agent Orange in the

8    claim for benefits. Third, a claimant may have suspected an Agent Orange connection but did

9    not expressly articulate this fact on the claim form for any number of reasons, including the

10    belief that it was not necessary to do so.

11        With respect to the first reason, the VA has forwarded no justification for penalizing a

12    claimant for failing to make an assertion that the defendants' own conduct rendered futile. In

13    other words, if a veteran failed to raise the Agent Orange issue because he knew it was

14    useless to do so under 38 C.F.R. § 3.311a(d), then the veteran was denied benefits as a result

15    of the invalid regulation just as surely as if he had expressly raised the issue and it had been

16    rejected.

17        With respect to the latter two circumstances, it is clear that such claims were also

18    erroneously denied under the invalid regulation given the non-adversarial veterans benefits

19    system created by Congress. Under this system, claimants are not required to assert the

20    specific legal basis upon which benefits may be based. *See e.g. Akles v. Derwinski*, 1 Vet.

21    App. 118, 120-21 (1991); *see also* Abrams Decl. at ¶ 8, Stichman Decl, Exh. 23. Rather, the

22    VA is *required* to "assist a claimant in developing the facts pertinent to his claim and to

23    render a decision which grants him every benefit that can be supported in law. . . " 38 C.F.R.

24    § 3.103(a)(1985); *see also* 38 U.S.C. § 5103(a) ("If a claimant's application for benefits . . .

25    is incomplete the [VA] shall notify the claimant of the evidence needed to complete the

26    application").

27        The system is thus "designed to function throughout with a high degree of informality

28    and solicitude for the claimant," *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305,

United States District Court

For the Northern District of California

311, 105 S. Ct. 3180, 3184 (1985), and it is expected that the VA will "fully and

sympathetically develop the veteran's claim to its optimum before deciding it on the merits."

H.Rep. No. 100-963 at 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5795.   Indeed, the

Supreme Court upheld a $10.00 attorney fee limit, which effectively precludes representation

by lawyers in VA claims proceedings, in part because of the non-adversarial nature of the

system. *Walters,* 473 U.S. at 311, 323-26.  Consistent with this approach, the Agent Orange

regulation itself imposed no special pleading requirement.  Similarly, the standard benefit

claim form provides no place to identify the legal grounds upon which benefits are sought, or

for that matter, to discuss the role of Agent Orange.  Rather, the form merely requires the

claimant to identify the "cause of death" (e.g. lung cancer) and to answer "yes" or "no" to

the question "Are you claiming that the cause of death was due to service?" *See* Pls' Exh.7.[5]

Moreover, as noted above, under 38 C.F.R. § 3.311a(b), all Vietnam veterans were

*automatically presumed* to have been exposed to Agent Orange.[6]  Given this automatic

presumption, along with (a) the VA's obligation to develop the record and consider all

potentially applicable legal theories, and (b) the absence of any pleading requirement in the

_____

[5]   As the VA points out, the 1984 Dioxin Act, Pub. L. 98-542 (HR 1961), 99 Stat. 2725, 98th Cong. 2d Sess., utilizes the term "claim." *See e.g.* section 5(a)(1)(requiring VA to establish guidelines to resolve claims for benefits where "the *claim* of service connection is based on a veteran's exposure during service. . . to a herbicide containing dioxin. . . " and section 5(b)(3)(requiring that VA regulations to include "a requirement that a claimant *filing a claim* based on a veteran's exposure to a herbicide containing dioxin. . . may not be required to produce evidence substantiating the veteran's exposure. . . " (emphasis added). The VA argues that this language shows a congressional intent to require veterans to expressly state that their claim for benefits is based on Agent Orange before they would be eligible for benefits under an Agent Orange regulation.  This argument loses force, however, given that the VA, itself, did not construe the term "claim" in these provisions as requiring claimants to assert any special "Agent Orange claim."  Rather, as discussed above, the VA's Agent Orange regulation (38 C.F.R. § 3.311a) contained no special pleading requirement.

[6]   This presumption continues under current policy as well. *See* Stichman Decl., Exh. 26 at § 7.20(b)("Unless there is affirmative evidence to the contrary, a veteran who served on active duty in the Republic of Vietnam during the Vietnam era is presumed to have been exposed to a herbicide agent.  The last date of exposure is the last on which he or she served in the Republic of Vietnam. . . .").

11

1    Agent Orange regulation, it can not seriously be disputed that the VA was in fact *required* to

2    consider whether Vietnam veterans were eligible for Agent Orange benefits under existing

3    regulations. Of course, if the claim for benefits involved any disease other than chloracne,

4    this consideration would result in a denial of benefits under 38 C.F.R. § 3.311a(d). This

5    does not alter the fact, however, that the VA was effectively denying claims under the invalid

6    regulation, notwithstanding that the claim form did not expressly reference Agent Orange or

7    herbicides.

8         The VA concedes that the VA claims process "was never intended to be rigid and

9    formalistic,"and is non-adversarial in nature.  It emphasizes, however, that VA claim

10   adjudicators are not mind-readers. Thus, the VA argues, it had no reason or obligation to

11   consider the applicability of the Agent Orange regulation if the claim failed to assert that the

12   injury or cause of death was connected to Agent Orange. The flaw in this argument,

13   however, is that the VA did in fact have reason to consider the applicability of the Agent

14   Orange application because the VA automatically presumed that every Vietnam veteran was

15   exposed to Agent Orange. Thus, every claim involving a veteran of this war necessarily

16   implicated the governing Agent Orange regulation.

17        Indeed, the very fact that the VA concedes that a claim was "made under 38 C.F.R. §

18   3.311a(d)"  if *either* the claim *or* the denial expressly referenced Agent Orange, implicitly

19   concedes that the VA could apply 38 C.F.R. § 3.311a (and deny claims based on this

20   regulation) even where the claim was silent as to Agent Orange. At oral argument, the VA

21   also essentially conceded that if a claimant had identified chloracne as the disability, the VA

22   would have had to consider the applicability of 38 C.F.R. § 3.311 even if the claimant had

23   not identified Agent Orange or 38 C.F.R. § 3.311a in the application. Of course, if the claim

24   was based on any disease other than chloracne, the VA would have necessarily had to find

25   that the claimant was not eligible for benefits under 38 C.F.R.§ 3.311a(d). In either case,

26   however, the fact that the claim did not expressly mention Agent Orange does not change the

27   conclusion that the benefit decision was  "made," at least in part, under the Agent Orange

28   regulation.

*(ii) Lack of citation to 38 C.F.R. § 3.311a in the written denial*

The VA's second readjudication criteria -- an explicit reference to 38 C.F.R. §3.311a(d) in the written denial-- similarly has the potential to exclude erroneous benefit decisions made under that regulation.  Until the Veterans' Benefits Amendments of 1989, 38 U.S.C. § 5104(b), the VA was not required to provide *any* reasons in its denials of benefits. Thus, benefit denials predating February 1990, when this legislation went into effect, often contained no basis for the decision other than the conclusory assertion that "no service connection was found." *See Crippen v. Brown*, 9 Vet. App.412, 420 (1996)("[b]efore [February 1990, VA] decisions routinely lacked . . . specificity." *Eddy v. Brown*, 9 Vet.App.52, 58 (1996)("silence in a final [VA] decision before February 1990 . . . cannot be taken as showing a failure to consider evidence of record"); *see also* S.Rep. No. 100-418 at 295-96, *reprinted in* 1989 U.S.C.C.A.N. at 1701-02 (discussing "poor" quality of denial notices, which often stated only that the claims were denied because service connection was not found).  The VA's failure to expressly cite to 38 C.F.R. § 3.311a(d) in a denial prior to February 1990 is thus hardly a reliable indication that the regulation was not in fact considered.  On the contrary,  it is quite possible that the VA was denying claims under 38 C.F.R. § 3.311a, but the record simply fails to reflect this fact.  Indeed, as discussed above, given the Agent Orange exposure presumption, and the lack of any pleading requirement in the regulation, the VA should have considered, under its standard procedures, whether Vietnam veterans were entitled to benefits under the Agent Orange regulation.

Accordingly, and for all of the reasons set forth above, the Court can not accept the VA's contention that this Court's May 1989 decision voided only those benefit decisions in which (1) the claimant specifically alleged Agent Orange (or herbicides) were a factor in the veteran's death or injury, or (2) the VA's denial of the benefits expressly cited to 38 C.F.R. § 3.311a(d) as grounds for the denial.  Such an approach would leave intact numerous

United States District Court
For the Northern District of California

13

United States District Court
For the Northern District of California

1  erroneous benefit decisions that the Court in that ruling intended the VA to revisit once it

2  promulgated valid Agent Orange regulations.[7]

3       This then leaves the question of exactly which benefit denials did the Court void?

4  The VA argues that if the Court did not void *only* those decisions in which the claim or the

5  denial expressly referenced Agent Orange or 38 C.F.R. § 3.311a, then the only other

6  possibility is that Court voided *every* benefit decision.  It reasons that if there is no pleading

7  requirement, then *every* claim was theoretically made under 38 C.F.R. § 3.311a, and

8  therefore we must have voided *every* benefit decision that pre-dates our decision in May of

9  1989 -- a result the Court could not have intended.

10       Certainly the Court did not intend to void every decision; however, the VA's

11  suggestion that this is the only other option is plainly incorrect.  As explained above, the

12  Court's order, read fairly in context, intended a middle ground-- the voiding of those

13  decisions that involved a disease that is later service connected based on a revised, valid

14  Agent Orange regulation.  In short, by voiding all benefit decisions "made under 38 C.F.R. §

15  3.311a(d)," the Court did not void *every* pre-May 1989 benefit decision; rather it only voided

16  

17  _____

18     [7] The VA also argues unpersuasively that paragraph 4 of the Stip. & Order sets out
"what the parties understood to be the universe of claimants affected by the readjudications"

19  and that this paragraph identifies a smaller universe of class members that is consistent with
the VA's approach. Paragraph 4 provides that "prior to conducting the [readjudications]

20  referred to in paragraph 3, above, VA will provide individual notice to each claimant denied
benefits under the previous regulation (as identified from the Special Issue Rating System

21  ("SIRS") or as a result of a VA finding based on information brought to its attention by a
claimant or claimant's representative, that, although the individual is not on SIRS, he or she

22  had a claim denial that was voided by the Court's Order), that the claims will be
readjudicated with all of the procedural rights normally applicable to such VA proceedings."

23  Stip. at ¶ 4.
   This Court agrees with plaintiffs that the evident purpose of paragraph 4 was only to

24  identify the VA's minimum notice obligations whenever it issued a final rule service
connecting a new disease under paragraph 3 of the Stip. & Order.  It was not intended to

25  define the entire universe of class members whose benefit denials were voided by the Court's
May 1989 order.  Moreover, paragraph four includes persons who were not on SIRS but who

26  the VA, nonetheless, finds had a "claim denial that was voided by the Court's Order" based
on "information brought to its attention by a claimant or claimant's representation."   On its

27  face, this would include persons such as Aponte or George who brought their particular
situation and prior claim denial to the attention of the VA.

28

1   those decisions *in which the disease or cause of death is later found -- under valid Agent*
2   *Orange regulation(s)-- to be service connected.*  This is a discrete group of benefit decisions,
3   the scope of which is defined by the VA's own regulations which later service connect
4   certain diseases based on their link to Agent Orange.

5       This interpretation of the Court's May 1989 decision is also most consistent with
6   Congress' purpose in enacting the 1984 Dioxin Act.  Congress passed that Act to ensure that
7   Vietnam veterans exposed to Agent Orange would obtain benefits for all disabilities that are
8   connected to their service:

9       The purpose of this Act . . . is to *ensure that Veterans' Administration*
        *disability compensation is provided to veterans who were exposed during*
10      *service in the Armed Forces in the Republic of Vietnam to a herbicide*
        *containing dioxin . . . for all disabilities arising after that service that are*
11      *connected, based on sound scientific and medical evidence, to such service*
        (and that Veterans' Administration dependency and indemnity compensation is
12      provided to survivors of those veterans for all deaths resulting from such
        disabilities).
13

14  38 U.S.C. § 1154 note, section 3 (emphasis added).  The VA's narrow view of this Court's
15  order only serves to undermine, rather than protect, the ability of Vietnam veterans to obtain
16  compensation for the devastating effects of diseases that are linked to Agent Orange, and
17  hence their service in Vietnam.

18      This Court thus holds, for all of the reasons set forth above, that the Court's order
19  voiding all benefits decisions "made under 33 C.F.R. § 3.311a(d)," voided all benefit
20  decisions which involved claims in which the disease or cause of death is later found --
21  under valid Agent Orange regulation(s)-- to be service connected.  Since the VA is required,
22  under the Stip. & Order, to readjudicate all claims "voided by the Court's May 3, 1989
23  Order," the VA's current policy, of refusing to readjudicate claims, unless the claim or the
24  denial expressly references Agent Orange, herbicides or 38 C.F.R. § 3.311a, violates the
25  Stip. & Order, as incorporated into the final judgment.

26
27
28

United States District Court
For the Northern District of California

15

United States District Court
For the Northern District of California

1    C <u>Relief requested by Plaintiffs</u>

2    As noted above, plaintiffs request three specific types of relief by this motion.

3    (a) *Declaratory Relief*

4    First, plaintiffs seek a declaration that the VA's current reajudication policy violates

5    the Stip. & Order, as incorporated into the final judgment. For all of the reasons discussed

6    above, this relief shall be granted.

7    (b) *Payment to Aponte and George*

8    Given the Court's ruling, the claims of Aponte and George are subject to

9    readjudication by the VA under paragraphs 3 and 4 of the Stip. & Order. Plaintiffs,

10   however, ask the Court to skip this step and instead directly order the VA to pay Aponte and

11   George the retroactive benefits owed them. The Stip. & Order, however, provides that *the*

12   *VA,* and not the Court, shall "readjudicate" those claims voided by the Court's May 1989

13   order. *See* Stip. & Order at ¶¶ 3-4. Accordingly, the Court concludes that it is more

14   appropriate to direct the VA to readjudicate the claims of Aponte and George, consistent

15   with this order, rather than to attempt any such readjudication itself.

16   (c) *Discovery*

17   Finally, plaintiffs ask for leave to conduct discovery regarding the number and

18   identity of other class members who may have been adversely affected by the VA's

19   erroneous interpretation of the Stip. & Order. The VA objects on the ground that plaintiffs'

20   motion raises question of law, and therefore discovery is not appropriate. This objection

21   is misplaced, however, since plaintiffs are not seeking discovery that is relevant to deciding

22   the issue raised by this motion. They are seeking discovery if they *win* the motion that will

23   help them identify class members adversely affected by the VA's erroneous readjudication

24   policy. The VA has identified no reason why such discovery, if reasonably fashioned,

25   should not be permitted. It also appears that such discovery is appropriate given that there

26   are likely other class members similarly situated to Aponte or George that may not be

27   identified absent discovery.

28

16

**CONCLUSION**

Accordingly, and good cause appearing, it is HEREBY ORDERED that:

1. Plaintiffs' Motion For Enforcement of Final Judgment is GRANTED in part and DENIED in part consistent with this Order.

2. Section 7.20(d)(3) of the Veterans Administration Adjudication Procedures Manual M21-1, Part VI, Change 52 (August 26, 1996) is declared to be inconsistent with, and in violation of, the Final Stip. & Order, as incorporated into the final judgment, because it erroneously instructs VA adjudicators to not readjudicate claims under the Stip. & Order, and to deny retroactive payment of service-connected benefits, if the claimant did not specifically allege that Agent Orange or herbicide exposure was a factor in the veteran's disability or death or the claim was not expressly denied under the regulation invalidated by this Court's Order of May 3, 1989.

3. Plaintiffs shall be permitted to take reasonable discovery designed to obtain information regarding the extent to which defendants have wrongfully denied members of the plaintiff class retroactive benefits under the Stip. & Order, and the identity of adversely affected class members. If there are disputes regarding such discovery, the parties shall meet in good faith to resolve such dispute(s). Any remaining disputes are hereby referred to a Magistrate Judge for a determination and ruling.

4. The VA shall "promptly" readjudicate the claims of Aponte and George pursuant to the Final Stip. & Order, consistent with this Order.

**IT IS SO ORDERED.**

DATED 2/11/99

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE