FILED

DEC 12 2000

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1

2          IN THE UNITED STATES DISTRICT COURT

3          FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5

6   BEVERLY NEHMER, et al.,

7                   Plaintiffs,

8          v.                              NO. C86-6160 TEH

9   UNITED STATES VETERANS                 CLASS ACTION
    ADMINISTRATION, et al.,
10                                         ORDER

11                  Defendants.

12

13

14                          INTRODUCTION

15          This case comprises a long-standing challenge to the United States government's

16   regulations regarding compensation of Vietnam Veterans exposed to Agent Orange.  In 1989,

17   this Court invalidated the United States Veteran Administration's regulation governing

18   benefits for veterans exposed to Agent Orange during their service in Vietnam.  The parties

19   subsequently settled the remaining remedial issues, and in 1991 this Court incorporated their

20   agreement into a final judgment.

21          Presently before the Court are plaintiffs' contentions that the Veterans Administration

22   ("VA") is construing three aspects of the parties' settlement agreement too narrowly, and

23   thus is improperly denying certain class members the full extent of retroactive benefits to

24   which they are entitled.  These matters were submitted to the Court in two separate rounds of

25   briefing and argument.  The first issue, regarding the denial of benefits to class members

26   suffering from prostate cancer, came on for hearing on May 22, 2000.  The second and third

27   issues, regarding the payment of interest on improperly withheld benefits, and the payment

28   of benefits to the estates of deceased class members, came on for hearing on October 23,

2000.  The Court has consolidated its ruling on these three matters into the instant Order.

United States District Court
For the Northern District of California

Having carefully considered the parties' oral and written arguments, and the entire record herein, the Court concludes, for the reasons set forth below, as follows:

(1) Plaintiffs' motion regarding the denial of benefits to class members suffering from prostate cancer shall be granted;

(2) Plaintiffs' motion regarding the payment of interest shall be denied;

(3) Plaintiffs' motion regarding the payment of benefits to the estates of deceased class members shall be granted.

## BACKGROUND

As explained in this Court's 1989 ruling, the United States Armed Forces used Agent Orange, a chemical defoliant containing the toxic substance dioxin, to clear dense jungle land in Vietnam during the war. Many veterans believed that their exposure to Agent Orange, "'one of the most highly toxic substances known to the scientific community,'" caused them to contract several debilitating or deadly diseases. *Nehmer v. U.S. Veterans' Admin.*, 712 F. Supp. 1404, 1407, n.1 (N.D. Cal. 1989) ("*Nehmer I*") [citation omitted]. Many veterans (or their surviving kin) sought compensation from the VA, claiming that diseases they developed after service in Vietnam were related to their exposure to Agent Orange during military service. The VA, however, consistently took the position that only one disease--a skin condition called chloracne -- was associated with exposure to Agent Orange, and thus "routinely denied compensation for veterans who allege[d] that exposure to Agent Orange has caused diseases other than chloracne." *Id.* at 1407.

In response to the controversy over Agent Orange, Congress in 1984 enacted the Veterans' Dioxin and Radiation Exposure Compensation Standards Act ("the Dioxin Act"), Pub. L. 98-542 (HR 1961), 99 Stat. 2725, 98th Cong. 2d Sess., *reprinted in part at*, 38 U.S.C. § 1154 note. The Act "was passed amidst veterans' 'concern[s] about possible long-term health effects of exposure to herbicides containing dioxin' . . . as well as 'scientific and medical uncertainty' regarding the long-term health effects of Agent Orange exposure." *Id.* (citation omitted). The purpose of the Act was "to ensure that disability compensation is

1  provided to veterans ' for all disabilities arising after [service in Vietnam] that are connected,

2  based on sound scientific and medical evidence, to such service.'" *Id.* (citation omitted).

3        The Act authorized the VA to conduct rulemaking to determine which if any diseases,

4  claimed to be associated with Agent Orange exposure, should be deemed "service

5  connected."  To this end, the VA was required to appoint an advisory committee which

6  would study the medical and scientific evidence and make recommendations to the VA.  The

7  VA was then required to promulgate regulations identifying those diseases it deemed to be

8  service connected, based on "sound scientific and medical evidence," *id.* at 1408.  Consistent

9  with the above, the VA issued a final regulation codified at 38 C.F.R. § 3.311a (1986).

10 Under subsection (b) of the regulation, veterans do not have to prove that they were exposed

11 to Agent Orange.  Rather, any veteran who served in Vietnam is automatically "presumed to

12 have been exposed to a herbicide containing dioxin." 38 C.F.R. § 3.311a(b).  Subsection (d),

13 however, reaffirmed the VA's earlier position that it would recognize only one disease--

14 chloracne-- as being sufficiently linked to Agent Orange to qualify as "service connected."

15 *Id.* at 1408.

16      *Nehmer I*

17      In February 1987, plaintiffs filed this class action challenging 38 C.F.R. § 3.311a(d)

18 on a variety of grounds.  After considering the parties' cross-motions for summary judgment,

19 this Court, in May of 1989, (1) invalidated 38 C.F.R. § 3.311a(d), on the ground that the VA

20 had used too restrictive a standard to determine whether a disease is sufficiently linked to

21 Agent Orange to qualify as service connected[1], and (2) "void[ed] all benefit decisions made

22 under 38 C.F.R. § [3.]311[a](d)." *Nehmer*, 712 F. Supp. at 1409, 1416-18.

---

26  [1]  Specifically, the Court found that the VA had improperly utilized the stricter
    standard of "proof of a causal relationship" when Congress had instead intended that the VA
27  "predicate service connection upon a finding of a significant statistical association between
    dioxin exposure and various diseases." *Nehmer*, 712 F. Supp. at 1420.

United States District Court
For the Northern District of California

1     Two years later, in May of 1991, the parties agreed to a Final Stipulation and Order

2   ("Stip. & Order") which resolved the remaining issues of injunctive and monetary relief for

3   the class.  With respect to injunctive relief, the Stip. & Order set forth the VA's

4   responsibilities with regard to further rulemaking concerning Agent Orange.  As a result of

5   this rulemaking, the VA, between 1990 and 1996, found that a number of cancers are linked

6   to Agent Orange using the appropriate standard, and, as a result, they have been accorded

7   service connected status.[2]

8     With respect to monetary relief, the Stip. & Order requires the VA to reopen and

9   readjudicate previously denied claims that were voided by the Court's May 1989 order if and

10   when the VA issues new Agent Orange regulations service-connecting diseases other than

11   chloracne.  Specifically, paragraph 3 of the Stip. & Order provides that:

12         As soon as a final rule is issued service connecting, based on dioxin [Agent
           Orange] , any of [certain specified diseases], and any other disease which may
13         be service connected in the future . . . the VA shall promptly thereafter
           readjudicate all claims for any such disease which were voided by the Court's
14         Order of May 3, 1989 as well as adjudicate all similar claims filed subsequent
           to the Court's May 3, 1989 Order without waiting for final rules to be issued
15         on any other diseases.

16   Stip. & Order at ¶ 3.

17     Paragraph 5 then states that, for those cases which are readjudicated because the

18   earlier denial was "voided" by the Court's order, the "effective date" for disability

19   compensation shall be the date the voided claim was originally filed:

20   _____

21

22     [2] Specifically, the VA has found that the following cancers are service connected:
     non-Hodgkin's lymphoma, 55 Fed. Reg. 43,124 (Oct. 26, 1990), *codified at* 38 C.F.R. §
     3.313 (1997), soft-tissue sarcoma, 38 C.F.R. § 3.309(e), Hodgkin's disease, 59 Fed Reg.
23   5,106 (Feb. 3, 1994), multiple myeloma, lung cancer, cancer of the bronchus, cancer of the
     larynx, cancer of the trachea, 59 Fed. Reg. 29, 723 (June 9, 1994), and prostate cancer.  61
24   Fed. Reg. 57,586 (Nov. 7, 1996).  With respect to lung cancer, cancer of the bronchus or
     cancer of the trachea, the veteran must have developed the cancer to a disability level of 10%
25   or more within 30 years of the last date on which the veteran served in Vietnam. 38 C.F.R. §
     3.307(a)(6)(ii)(1997).
26     The VA has also service connected two non-cancer diseases: porphyria cutanea tarda
     (a liver disorder) and acute and subacute peripheral neuropathy.  38 C.F.R. §§ 3.307(a)(6),
27   3.309(e)(1997).  For a veteran to qualify for benefits due to Agent Orange exposure, based
     on these two diseases, the disease must have become manifest to a disability level of 10% or
28   more within one year of leaving Vietnam. *Id* at § 3.307(a)(6)(ii).

1    For any of [certain specified diseases], and any other disease which may be
     service connected in the future pursuant to paragraph 3 above, . . . [a]s to any
2    denials of claims which were voided as a result of the Court's May 3, 1989
     Order, the effective date for disability compensation or dependency and
3    indemnity compensation ("DIC"), if the claim is allowed upon readjudication
     pursuant to paragraph 3 and 4 above, will be the date the claim giving rise to
4    the voided decision was filed. . . .

5    Stip. & Order at ¶ 5.

6        *Nehmer II*

7        In 1998, plaintiffs filed a motion with the Court, arguing that the VA had failed to

8    fully live up to its readjudication obligations under the Stip. & Order. As noted above, the

9    VA, as a result of this Court's 1989 Order and the newly applied standard, has found that a

10   number of diseases, beside chloracne, are service connected based on their link to Agent

11   Orange. Thus, there are many class members who, during the time period when the invalid

12   regulation was in effect, filed a claim for service-connected benefits based on a disease that

13   the VA did not then recognize as linked to Agent Orange -- but which the VA now

14   recognizes is linked pursuant to its revised Agent Orange regulations. Those claims were, of

15   course, all denied at the time they were filed.

16       The VA took the position that ¶ 3 of the Stip. & Order does not require it to

17   readjudicate such claims unless (1) the claim specifically alleged that Agent Orange (or

18   herbicides) was a factor in the veteran's death or injury, or (2) the VA's denial of the

19   benefits expressly cited to 38 C.F.R. § 3.311a as grounds for the denial. Plaintiffs therefore

20   moved to enforce the judgment, arguing that the VA's readjudication policy violated the Stip.

21   & Order.[3] Specifically, plaintiffs asked the Court to: (1) declare that the VA's readjudication

22

23

24       [3] As noted earlier, the final judgment in this action incorporated the terms of the Stip.
     & Order (as well as the Court's May 3, 1989 decision). *See* Order of Oct. 9, 1991 at 1. The
25   Court further stated that "this case shall be closed with the defendants subject to ongoing,
     enforceable obligations in the future." As such, the Court retains jurisdiction to enforce the
26   Stip. & Order and to address the instant motion. *See Nehmer*, 32 F.Supp.2d at 1178 n.4; *see
     also Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S. Ct. 1673, 1677
27   (1994) (where terms of settlement agreement are incorporated into judgment court retains
     ancillary jurisdiction over claim of breach of the agreement). Defendants do not dispute the
28   Court's jurisdiction over plaintiffs' motion.

United States District Court
For the Northern District of California

1    policy, as described above, violates paragraphs 3 and 5 of the Stip. & Order, (2) order the

2    VA to pay two individual class members (Aponte and George) the retroactive benefits due

3    them under paragraph 5 of the Stip. & Order, and (3) permit plaintiffs to obtain discovery

4    that would assist them in identifying other class members that may have been adversely

5    affected by the VA's failure to comply with its readjudication obligations under the Stip. &

6    Order.

7        In an Order filed February 11, 1999, this Court found that the VA's position, "while

8    perhaps superficially appealing and administratively convenient, is overly formalistic and

9    simplistic." *Nehmer v. U.S. Veterans Administration*, 32 F.Supp.2d 1175, 1180 (N.D. Cal.

10   1999) (*Nehmer II*). Thus, the Court held as follows:

11       [T]he Court's [1989] order voiding all benefits decisions "made under 33 C.F.R. §
         3.311a(d)," voided all benefit decisions which involved claims in which the disease or
12       cause of death is later found -- under valid Agent Orange regulation(s)-- to be service
         connected. Since the VA is required, under the Stip. & Order, to readjudicate all
13       claims "voided by the Court's May 3, 1989 Order," the VA's current policy, of
         refusing to readjudicate claims, unless the claim or the denial expressly references
14       Agent Orange, herbicides or 38 C.F.R. § 3.311a, violates the Stip. & Order, as
         incorporated into the final judgment.
15

16   *Id.* at 1183. Accordingly, the Court granted in part plaintiffs' request for declaratory relief,

17   directed the VA to promptly readjudicate the claims of the two individual class members

18   consistent with the Court's order, and granted plaintiffs reasonable discovery to determine

19   the identity of class members who had been adversely affected by the VA's misinterpretation

20   and overly narrow application of the retroactive benefits provisions of the Stip. & Order.[4] *Id.*

21   at 1184.

22   _____

23

24

25       [4]  In their briefing on the motion set for hearing on October 23, 2000, plaintiffs state
         that, although the discovery process has not been completed, the evidence thus far obtained
26       demonstrates that the VA's non-compliance that was the subject of the 1999 Order has
         resulted in the wrongful withholding of retroactive benefits to two hundred (200) identified
27       class members, and that the total number of identified class members is anticipated to be two
         hundred fifty five (255). *See* Greer Dec. at para. 3, 5, 7, 8. The VA has released retroactive
28       benefits to forty-five of these class members, in an average amount of $35,086 per
         beneficiary. *Id.*

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

2                                    **DISCUSSION**

3    **A. Plaintiffs' Motion for Enforcement regarding Class Member with Prostate Cancer**

4            Plaintiffs claim that the VA has been systematically refusing to pay the full amount of

5    retroactive benefits based upon some of the disability and death benefit claims filed by class

6    members suffering from service connected prostate cancer.[5]

7                    **1. Factual Background**

8            In addition to the summary of facts set forth above, the Court provides an overview of

9    the process whereby the VA ultimately determined that prostate cancer is a service connected

10   disease.  The Agent Orange Act of 1991 contains a detailed step-by-step process which

11   Congress has required the VA to follow during the twelve (12) year period from 1991 to

12   2003 to determine which diseases should be accorded service connected status due to dioxin

13   exposure.  *See* 38 U.S.C. § 1116(b).[6]  The VA was first required to enter into a contract with

14   the National Academy of Sciences (NAS), whereby NAS would review and evaluate the

15   scientific evidence on Agent Orange until the year 2003, and submit biennial reports

16   detailing its evaluations.  The NAS has been charged with determining which diseases are

17   associated with dioxin exposure.  Congress created the periodic reporting process over a

18   greater than decade-long period in recognition that it would take time for the scientific

19   experts to gather and develop evidence.  *See* <u>Veterans and Agent Orange: Health Effects of</u>

20   <u>Herbicides Used in Vietnam</u> (National Academy Press 1993), pp. 1-3 [Exh. L to Greer Dec.

21   _____

22

23           [5] When plaintiffs filed their motion in February 2000, they identified five hundred
     nineteen (519) prostate cancer claimants who were not paid the retroactive benefits allegedly
     required by the Stip. & Order.  In their briefing on the motions heard in October 2000,

24   plaintiffs state that they have identified an additional four hundred seventy two (472) such
     class members.  *See* Greer Dec. at para. 9.  Plaintiffs project that upon completion of their

25   review of all the discovery provided by the VA, the total number of such class members will
     reach one thousand two hundred sixty eight (1,268).  *Id.*

26

27           [6] The Stip. & Order expressly incorporates this provision of the Act by reference.

28   *See* Stip. & Order, ¶ 3.

                                                7

1  in Support of Plaintiffs' Motion].  Congress and the scientific experts clearly expected the

2  final answers to the association between dioxin and the diseases it causes to emerge over

3  time.

4      Within sixty (60) days of each biennial NAS report, the VA is required to determine

5  whether additional diseases should be service connected due to dioxin exposure.  For each

6  such determination, the VA is required to promulgate regulations within sixty (60) days

7  providing a presumption of service connection to such additional disease(s).  *See* 38 U.S.C. §

8  1116(c)(1)(A).  The Act also directed the VA to determine which diseases were not shown to

9  be associated with dioxin exposure, and to publish notice of such determination and remove

10  any existing regulatory presumptions for any such diseases.  *Id.* at §1116(c)(1)(B).

11      In 1994, the NAS issued its first biennial report, linking a number of diseases to

12  dioxin exposure which had not been recognized as such previously.  However, with

13  particular relevance to the instant motion, NAS did not link prostate cancer to dioxin

14  exposure, based upon the scientific evidence before the Academy at that time.  Based on the

15  1994 report, the VA determined that a number of diseases were linked to dioxin exposure

16  which it had not previously recognized, and that a presumption of service connection was not

17  warranted for prostate cancer.  The VA published a regulation to that effect on January 4,

18  1994.  *See* Fed. Reg. 341.[7]

19      Two years later, in 1996, the NAS issued its second biennial report.  Based on further

20  review of the scientific evidence, NAS found a sufficient link between dioxin exposure and

21  prostate cancer.  Following receipt of the 1996 NAS report, the VA reevaluated its earlier

22  determination, and concluded that prostate cancer should be granted service connected

26  [7] Plaintiffs do not dispute the propriety of the 1994 regulation based on the findings of the NAS at that time.  Indeed, the VA's determination that then-existing scientific

27  information did not support a presumption of service connection for prostate cancer was upheld by the Federal Circuit in *LeFevre v. Secretary, Dep't of Veterans Affairs*, 66 F.3d

28  1191, 1201-02 (Fed. Cir. 1995).

United States District Court
For the Northern District of California

status. The Secretary published a report to that effect on November 7, 1996. *See* 61 Fed. Reg. 57,586.

The VA now recognizes that prostate cancer is service connected and that Vietnam veterans suffering from that disease are entitled to disability benefits under the Stip. & Order. In 1999 the VA issued an internal directive to its regional offices by which class members who applied for benefits due to prostate cancer are placed in two different categories: (1) those who applied before the initial VA determination on January 4, 1994[8] that prostate cancer is not service connected, and (2) those who applied after that date. For those claimants in the first category, the VA would grant effective dates as stated in paragraphs 3 and 5 of the Stip. & Order. For those claimants in the second category, the VA determined that the retroactive benefit provisions of the Stip. & Order would not apply, and the VA deemed the effective date to be November 7, 1996, the date that the regulation recognizing the service connected status of prostate cancer was published. The Court notes that the VA's position would lead to anomalous results. For example, a veteran who qualifies for benefits due to prostate cancer and who filed a claim the day before the January 4, 1994 determination of non-service connection, would be entitled to benefits retroactive to June 4, 1994. However, a similarly situated veteran who filed a claim a day later would be entitled to benefits retroactive to November 7, 1996, resulting in a two and a half year differential in payments.

The VA has indicated that its position is provisional, and that it has directed the regional offices to set aside for future adjudication, following a ruling by the Court or agreement with plaintiffs, those claims that were filed after the 1994 regulations were published. *See* 1999 Directive, ¶ [Exh. K to Plaintiff's Motion].

---

[8] The VA stated that the date was June 9, 1994, but has since corrected that error by stating that the actual date of determination was January 4, 1994, based upon its publication of the denial of service connection for prostate cancer in the Federal Register.

United States District Court
For the Northern District of California

**2.    Discussion**

In a nutshell, plaintiffs argue that the explicit language of the Stip. & Order requires the VA to adjudicate *all* claims as soon as a final rule is issued service connecting a particular disease to Agent Orange exposure. Defendants argue that the purpose of the Stip. & Order "was to provide relief to those claimants who were injured as a result of the VA's invalid regulation" that formed the basis of plaintiffs' original suit and this Court's 1989 order. Thus, plaintiffs rely on the language of the Stip. & Order for the coverage of all Vietnam veterans for whom the VA at some point recognizes a service connected disease relating to dioxin. Defendants view this as too broad an "extension" of the scope of the Stip. & Order, which they argue should only be used to compensate those veterans who were "harmed by the invalidated regulation."

It is readily apparent to the Court that defendants have, yet again, given the Stip. & Order a reading that is overly formalistic, and which could fairly be described as hyper-technical and evasive. A plain reading of the Stip. & Order reveals the following relevant language:

> 3. As soon as a final rule is issued service connecting, based on dioxin exposure, any ... disease which may be service connected in the future pursuant to the Agent Orange Act of 1991 [citation omitted], the VA shall promptly thereafter ... adjudicate all ... claims filed subsequent to the Court's May 3, 1989 Order ...

> 5. For ... any ... disease which may be service connected in the future pursuant to paragraph 3, ... [and] [f]or any claim for any such disease which was not filed until after May 3, 1989, the effective date for beginning disability compensation ... will be the date the claim was filed ...

The Court is satisfied that the plain meaning of these two provisions is that at whatever point the VA service connects a disease to dioxin, the VA then becomes responsible for adjudicating the claim and applying an effective date as of the time the claim was filed. *See Hughes v. United States*, 342 U.S. 353 (1952); *Gates v. Shinn*, 98 F.3d 463 (9th Cir. 1996) (consent decree to be construed according to its plain language).

Even if, *arguendo*, the Court were to look beyond the plain meaning of the Stip. & Order, defendants' argument would fail for a number of reasons. The crux of defendants' argument is that the Court should look to the "purpose" underlying the parties' agreement.

United States District Court
For the Northern District of California

In their view, the Stip. & Order "was intended only to 'remedy a past wrong,' not to grant future claimants special remedial benefits merely because their claims happen to be based on Agent Orange." *See* Defs' Motion for Clarification and Opposition, at 14. The "wrong" to be remedied, according to defendants, was the enactment of section 3.311a, the regulation invalidated by this Court in 1989. Where an initial claim is denied under a valid regulation, the claimant "cannot be said to have been harmed." *See* Defs' Motion at 11. Up to that point, the harm analysis works. But defendants take it a critical step further, a step that goes over the brink of reason, by arguing that where the initial claim is denied under a then-valid regulation, the fact of the regulation being subsequently overturned is irrelevant. This is to view the 1994 prostate regulation in an historical vacuum. While defendants repeatedly refer to the 1994 regulation as a "final and binding decision," the fact is that it turned out to be an interim decision that was overturned two years later upon further scientific consideration.

Further, the Stip. & Order itself does not have a "purpose," as defendants contend. The parties had purposes, which they compromised in order to avoid the risks of litigation and to reach a workable settlement. *See United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971). The Court takes defendants' argument to mean that it views the Stip. & Order as subject to varying interpretations, which, if true, would trigger the parties' rights to introduce extrinsic evidence.[9] *See United States v. ITT Continental Baking Co*, 420 U.S. 223, 238 (1975). But defendants proffer no such evidence whatsoever. Rather, their argument comes full circle -- they contend that the "purpose" of the Stip. & Order, i.e. the intentions of the

---

[9] At the May 22, 2000 hearing, the Court requested that the parties file supplemental letter briefs addressing (1) "which state is the proper 'situs state' in the action," and (2) "what is the applicable law for interpreting contracts once the situs state is determined." The parties filed timely briefs and agree that federal law, and not the law of any particular state, should govern the Court's interpretation of the Stip. & Order. The parties also agree that general rules of contract interpretation should guide the Court in evaluating the parties' arguments as to whether the VA has complied with the Stip. & Order. However, plaintiffs contend that the relevant language of the Stip. & Order is sufficiently clear and unambiguous to warrant the Court in staying within the "four corners" of the document, while defendants suggest that the language of the Stip. & Order is subject to multiple interpretations, thereby justifying the Court in considering extrinsic evidence.

1  parties, can be gleaned from the terms of the document itself.  Thus, the Court ends up where
2  it started, by finding that the plain language of the Stip. & Order simply does not support
3  defendants' reading of it.

4      The VA's "purpose" argument also suffers from the VA's own past inconsistent
5  application of the Stip. & Order.  Although the entire foundation for its present position is
6  that "only claimants that were adversely affected by section 3.311a, the regulation
7  invalidated by this Court" in 1989, are entitled to retroactive benefits under the Stip. &
8  Order, the VA actually has granted such benefits to some class members who filed their
9  claims well after the Court invalidated section 3.311a.  *See* Defs' Opp. at 13.  Thus, the VA
10  itself has not abided its own purported "purpose" underlying the Stip. and Order.

11      Defendants counter that the inclusion in the Stip. & Order of claims to be filed
12  subsequent to May 3, 1989 was merely an "acknowledg[ment] that certain claims would be
13  filed and pending between the time that the Court invalidated sec. 3.311a and the issuance of
14  the new, valid regulations."  *See* Defs' Opp. at 13; Defs' Reply at 3.  In defendants' view,
15  "the relief provided [by the Stip. & Order] was designed to ensure that claimants whose
16  claims were pending before the new rules were issued would be entitled to retroactive
17  benefits if they were granted an award of benefits under the new 1994 rules."  *See* Defs'
18  Opp. at 13-14.  Again, defendants' argument goes too far.  The Stip. & Order expressly
19  incorporates the Agent Orange Act, which has a twelve year life span and which is based on
20  the development of scientific knowledge over time.  It would be inconsistent with the Act
21  and with the plain meaning of the Stip. & Order to limit the field of prospective remedies to
22  the narrow range defined by defendants, as it would disregard the many veterans whose
23  diseases were not scientifically linked to dioxin until after the first NAS report.

24      The Court notes that the Stip. & Order is not therefore boundless.  The Act expires in
25  2003.  *See* 38 U.S.C.S. §1116(e).  The retroactive benefit provisions of the Stip. & Order are
26  expressly tied to the Act, so that initial claims filed after 2003 will fall outside the scope of
27  the Stip. & Order.  Thus, defendants' fears that the Stip. & Order would "operate into the
28  indefinite future for claims that have not yet been filed" are groundless.

United States District Court
For the Northern District of California

1    Defendants also argue that paragraph 3 of the Stip. & Order, which requires the VA to

2  "adjudicate" claims filed after May 3, 1989, does not include *re*adjudication of any claims.

3  Since claimants who were denied based on claims made during the 1994-96 period when

4  prostate cancer was deemed not service connected are technically *re*applying based on the

5  VA's reversal of its position on service connection, the VA contends that all such claimants

6  are seeking *re*adjudication; since the Stip. & Order only requires the VA to "adjudicate"

7  post-1989 claims, these claimants are, according to defendants, governed only by the statutes

8  and regulations generally applicable to non-class member veterans.  Defendants again are

9  relying on a hyper-technical interpretation of the Stip. & Order divorced from the full context

10  of the agreement and its actual implementation by the VA.  First of all, it is clear from

11  reading the entire Stip. & Order that the terms "adjudicate" and "readjudicate" are not given

12  discrete and mutually exclusive meanings; in fact, the terms are sometimes used

13  interchangeably.  At a minimum, the two terms plainly do not have the precise defining force

14  contended by defendants.  For example, portions of paragraph 4 of the Stip. & Order refer to

15  the decision-making process for veterans whose past claims had been denied <u>and</u> for veterans

16  whose claims had never been ruled upon as "adjudications;" other portions of the same

17  paragraph refer to the decisions on both types of claims as "readjudications."

18    Secondly, to the extent that the relevant terms of paragraph 3 can possibly be read in

19  isolation, it is clear to the Court that in the specific context of paragraph 3, the verb

20  "readjudicate" is linked to those claims that were formally voided by the Court's May 3,

21  1989 Order, as opposed to claims filed after that date.  Defendants wish to restrict the use of

22  the term "readjudicate" for all purposes to this particular definition.  In that manner, only

23  claims filed before May 3, 1989 could ever be entitled to "readjudication," and any claim

24  filed after that date would only be entitled to a single "adjudication" under the provisions of

25  the Stip. & Order, no matter how wrong that "adjudication" might be.  If the Stip. & Order

26  actually made these definitions explicit, and if it applied them to the context of the reversal

27  of a service connection determination, or at least to analogous circumstances, the Court

28  might be more inclined toward defendants' position.  However, the Court will not accept the

13

United States District Court
For the Northern District of California

1  unwarranted and overly restrictive definitions supplied by defendants and then graft them

2  onto a factual setting where they would thwart, rather than further, the remedial function of

3  the agreement. If the use of the terms "adjudicate" and "readjudicate" have any materially

4  distinct meanings in the particular context of paragraph 3, those meanings clearly are not

5  designed to carve out claims of class members which happen to fall in the time period

6  between conflicting NAS reports.

7      In the final analysis, the VA's position amounts to little more than an expression of its

8  desire to be relieved from part of the obligations it agreed to in 1991, a desire to which this

9  Court will pay no heed.

10  **B.  Plaintiffs' Motion for Equitable Relief Regarding Payment of Interest**

11      Plaintiffs claim that the VA has failed to pay injured class members interest on

12  retroactive benefits that have been improperly withheld and which were due pursuant to the

13  Court's order in *Nehmer II*.[10]  Plaintiffs argue that class members were unjustly denied the

14  use of the withheld retroactive benefits during the period beginning on the date the VA

15  should have paid each claimant the benefits required by the Stip. & Order, and ending on the

16  date the VA actually released, or will release, the funds.  Plaintiffs contend that the Court is

17  authorized to require such interest payments on a number of grounds: (1) by viewing the

18  Stip. & Order as a contract, the Court may consider the failure to pay interest on amounts

19  due a breach of contract; (2) by viewing the Stip. & Order as a court order, the Court may

20  award interest as an element of the Court's inherent power to order remedial relief; or (3) the

21  Court may award interest as a penalty through the vehicle of civil contempt.

22      Defendants do not contest plaintiffs' rendition of the factual or procedural background

23  relevant to this issue, but rather argue that interest payments are barred by sovereign

24  immunity.  Defendants cite Supreme Court authority for the proposition that where the

25  _____

26

27      [10]  While plaintiffs often refer to the amounts sought as compensation for "delay in
payment" or the lost "use of funds," it is clear that plaintiffs seek nothing different than what
28  is commonly understood as interest on delayed payments.

**United States District Court**
For the Northern District of California

1   United States is a defendant, "interest cannot be recovered unless the award of interest was

2   affirmatively and separately contemplated by Congress." *Library of Congress v. Shaw*, 478

3   U.S. 310, 315 (1986).

4         Plaintiffs respond by arguing that since sovereign immunity was waived for the Stip.

5   & Order requiring the VA to pay retroactive benefits to class members, "it obviously follows

6   that sovereign immunity has been waived for an injunction that does no more than enforce

7   this consent decree." *See* Plaintiffs' Reply at 2.  The Court agrees with this general

8   principle.  However, on the facts of the instant case, while the Stip. & Order explicitly

9   requires retroactive benefit payments, the document makes no mention of interest payments.

10  Furthermore, while the retroactive payments due under the Stip. & Order cover multiple

11  years' worth of funds for many claimants, the Stip. & Order does not provide for interest on

12  those payments.  Thus, whether viewed as a contract,[11] a court order,[12] or both, the Stip. &

13  Order alone does not provide an appropriate basis for relief on the motion for interest

14  payments.[13]

15  ————————————————

16

17      [11] Viewing the Stip. & Order as a contract, it is apparent that interest payments were
    neither expressly nor impliedly included as part of the agreement.  Without interest being a
18  part of the contract, it follows that there could be no breach in its non-payment.

19

20      [12] Viewing the Stip. & Order as a court order, the Court believes that it would be
    exceeding the appropriate bounds of its discretion to award interest in this circumstance.
21  Plaintiffs are correct in the general sense that the Court does have the authority to make such
    orders as will give full effect to its original ruling.  *See Alexander v. Hill*, 707 F.2d 780, 783
22  (4th Cir. 1983).  However, plaintiffs have failed to convince the Court that the award of
    interest is necessary for the fulfillment of the relief ordered in *Nehmer II*.  Plaintiffs cite
23  *AMF v. Jewett*, 711 F.2d 1096, 1101 (1st Cir. 1983) for the proposition that the court has "no
    discretion to withhold" financial compensation to a party harmed by their opponent's
24  disobedience of a consent decree.  However, *AMF* does not further plaintiffs' position,
    because the court there based its order on a finding of civil contempt.  Plaintiffs cite no Ninth
25  Circuit law on this point, and from the cases they cite it appears that remedial fines require a
    foundation of contemptible action, whether an actual finding of contempt has been made or
26  not.

27

28      [13] This analysis applies as well to an alternative argument made by plaintiffs, wherein

15

United States District Court

For the Northern District of California

1    Plaintiffs argue in the alternative that the VA's breach of its obligations under the

2    Stip. & Order, as found by this Court in *Nehmer II*, justify awarding interest as a kind of

3    sanction or penalty. The further implication is that such sanction or penalty would be within

4    the parameters of the Stip. & Order, and therefore would be within the confines of

5    defendants' waiver of sovereign immunity. The flaw in plaintiffs' reasoning is its

6    assumption that the Court's order in *Nehmer II* equates with a finding that defendants

7    breached or disobeyed the Stip. & Order through its overly formalistic interpretation of that

8    document.

9    While the Court certainly found that defendants had misinterpreted the Stip. & Order

10    in a serious way that caused substantial injury to many class members, one cannot simply

11    assume that defendants' actions thereby amounted to, or were the equivalent of, a breach of

12    contract or a disobedience of the Court's order. The Court based its decision in *Nehmer II*

13    on a finding that "the VA's approach is inconsistent with both the spirit and intent of this

14    Court's decision, as well as the liberal nature of the VA's own claims process." 32

15    F.Supp.2d at 1180. The Court came to that conclusion after extensive analysis. The Court

16    finds that defendants' incorrect interpretation of the Stip. & Order does not equate to a

17    breach of contract nor disobedience of the Court's order, and that the imposition of interest

18    payments as a penalty or remedial measure is not warranted.

19    Explicitly recognizing that the Court may not be authorized to require the payment of

20    interest on the basis of the positions discussed above, plaintiffs argue that the Court has the

21    discretion to award interest as a contempt sanction. The parties agree that the standard for

22    finding a party in civil contempt is:

23    _____

24    they contend that an independent waiver of sovereign immunity exists in the Little Tucker
      Act, 28 U.S.C. sec. 1346(a). The Act waives sovereign immunity to allow U.S. district

25    courts jurisdiction over a claim founded on an express or implied contract with the United
      States. While the Court agrees with plaintiffs that the Stip. & Order is, in part, in the nature

26    of a contract, plaintiffs themselves concede that the document does not contain an express
      provision for the payment of interest, and the Court does not find any basis upon which to

27    imply such an agreement in the Stip. & Order. Therefore, with no basis to support the
      finding of an express or implied provision for the payment of interest, the Little Tucker Act

28    is of no help to plaintiffs here.

> The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply.

*Federal Trade Commission v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999),

*quoting Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992).

Defendants' violation of the Stip. & Order, as determined by this Court in *Nehmer II*, provides a necessary but not sufficient basis for a contempt finding. Plaintiffs must show in addition that the violation was based upon a "specific and definite" provision of the Stip. & Order. Plaintiffs argue that the Court's decision in *Nehmer II* necessarily was based upon a finding that the language of the Stip. & Order was specific and definite. This argument is too simplistic. As discussed above, while it is true that the Court found defendants' interpretation of the Stip. & Order to be unwarranted, the Court did not go so far as plaintiffs contend. *See Nehmer II*, 32 F.Supp.2d at 1180. Further, the Court's conclusion does not equate with a finding that the Stip. & Order was specific and definite for the purpose of a contempt finding. As defendants point out, while the provisions of the Stip. & Order set forth in general terms the VA's responsibilities, it did not identify for the VA the specific claims that were subject to readjudication. The Court finds that defendants' incorrect interpretation of the Stip. & Order was not based upon sufficiently specific and detailed terms, nor was the VA's behavior sufficiently egregious, to warrant an order of civil contempt.[14]

**C. Plaintiffs' Motion for Equitable Relief Regarding Full Payment to the Estates of Deceased Class Members**

Plaintiffs contend that the VA has refused to pay benefits to the estates of injured class members who died after the date that their retroactive benefits began to accrue, but

---

[14] Since the Court finds no basis for civil contempt, the Court need not address whether sovereign immunity would protect defendants in the event that a proper basis for contempt had been proved.

United States District Court
For the Northern District of California

1    before the VA was ready to make the payment that was due.[15]  Defendants argue, as in the

2    context of interest payments discussed above, that they are protected by sovereign

3    immunity.[16]

4        Above, the Court determined that the payment of interest is outside the scope of the

5    Stip. & Order, and that, therefore, the requested relief would be outside the waiver of

6    sovereign immunity that is coextensive with the Stip. & Order.  In the present context

7    regarding payments to the estates of deceased class members, the Court finds that the

8    opposite conclusion is warranted, i.e. payment to class members, whether living or deceased,

9    is within the confines of the Stip. & Order, and therefore is within defendants' prior waiver

10   of sovereign immunity.

11       The Stip. & Order is framed in terms of "claims" rather than individuals -- paragraphs

12   3 and 5 require the VA to adjudicate  "claims for any such disease" found to be service

13   connected.  Once a claim is made, the VA's duties under the Stip. & Order are triggered, and

14   nothing in that document relieves the VA of those duties upon death of a claimant.

15       Here, plaintiffs simply ask the Court to give effect to the plain language of the Stip. &

16   Order by requiring that funds due to class members be released, regardless of whether the

17   individual veteran is living or dead.  It is defendants who ask the Court to go beyond the

18   confines of the Stip. & Order by implying new language into the order, carving out an

_____

20   [15]  Plaintiffs have identified two class members whose estates are being deprived of

21   retroactive benefits due to the VA's position, and plaintiffs contend that there are likely to be
     a significant number of similarly situated veterans, though the number of such class members

22   and their identities are not yet known to plaintiffs.

24   [16]  On February 29, 2000, defendants filed a Motion for Clarification of the Court's
     orders in *Nehmer I* and *Nehmer II*, in conjunction with their opposition to plaintiff's

25   enforcement motion.  The issues raised in the Motion for Clarification were postponed from
     full briefing and consideration at the May 22, 2000 hearing, and were consolidated with the

26   briefing and hearing schedule established for plaintiffs' second enforcement motion set for
     hearing on October 23, 2000.  While the Court refers herein to plaintiffs as the moving party

27   and defendants as the opposing party, the Court recognizes that certain issues were raised
     initially by defendants.   The parties may be assured that the Court has fully considered all

28   arguments and authorities raised by both parties.

United States District Court
For the Northern District of California

exception for class members who have died prior to payment.   Thus, the Court finds that the VA's waiver of sovereign immunity stemming from the signing of the Stip. & Order functions additionally as a waiver with respect to the withholding of funds that are rightly owed to the estates of deceased class members.[17]

Nevertheless, assuming *arguendo* that the VA's denial of full payment to the estates of deceased class members were to fall outside the waiver of sovereign immunity that attaches to the Stip. & Order, the Court addresses defendants' remaining arguments. Defendants note that Congress has long provided that if a veteran dies before the U.S. Postal Service delivers a VA disability check to the veteran, the Postal Service is prohibited from delivering mail containing the check to "any person whomsoever." 38 U.S.C. sec. 5120(b). Similarly, 38 U.S.C. sec. 5112(b)(1) sets forth the "effective date of a ... discontinuance of [disability] compensation ... by reason of death of a payee... [as] the last day of the month before ... death occurs." Defendants rely on these statutes to argue that sovereign immunity protects them from having to pay the estates of deceased veterans.  However, these statutes, which control the regular *prospective* monthly payment of veterans benefits, cannot be fairly read to control the situation in the instant case where substantial *retroactive* benefits are owed due to the VA's failure to properly adjudicate the claims of class members.  The VA cannot be allowed to violate the rights of veterans, then agree to compensate for the violation, and subsequently hide behind generic rules that are based upon the normal and timely process that the VA failed to follow in the first place.  The Court finds that these statutes are inapplicable to the circumstances of the instant case.

Defendants also point to 38 U.S.C. sec. 5121, which authorizes the VA to pay to qualifying surviving family members "accrued benefits" (which includes retroactive

---

[17] Plaintiffs also point out that the VA has taken an inconsistent position on this point in another case.  In *Giusti-Bravo v. U.S. Veterans Adm.*, Civ. No. 87-0590 (CCC)(D.P.R.), the VA agreed to pay retroactive disability benefits to the surviving spouse of a veteran who had died prior to the receipt of checks issued by the VA.  *See* Plaintiffs' Reply, Exh. A. Thus, the VA conceded that it had waived sovereign immunity in making the very same kind of payments that plaintiffs demand in the instant motion.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

payments) to which a veteran was entitled at death. For most veterans who die while receiving monthly VA disability benefits, the amount of money owed by the VA at the time of death is one month or less. However, a number of other scenarios are possible. For those veterans who die shortly after receipt of a VA decision awarding them retroactive benefits, and before the check is mailed, section 5121 limits the amount a surviving family member may receive to the period covering the last two years prior to the veteran's death. If the benefits fall within the two year period and go further back in time as well, all amounts attributed to the period beyond two years from death are withheld. If retroactive benefits owed to a veteran at the time of death relate entirely to a period ending more than two years prior to death, none of the benefits owed to the veteran will be paid to the veteran's estate or to a surviving family member.

Plaintiffs point out, however, that another provision of the U.S. Code, 38 U.S.C. § 503, overrides section 5121 in the present circumstances by expressly authorizing the VA to pay retroactive disability benefits to a surviving spouse, child of a veteran, or "any person" where the Secretary determines that benefits administered by the VA "have not been provided by reason of administrative error on the part of the Federal Government or any of its employees." Thus, while section 5121 may limit payment of certain types of retroactive benefits to a two year period prior to the veteran's death, section 503 specifically and directly authorizes the payment of the benefits at issue in the instant litigation.

Therefore, defendants' claim of sovereign immunity cannot stand.

## CONCLUSION

Accordingly, with good cause appearing, it is HEREBY ORDERED that:

1. Plaintiffs' Motion For Enforcement of Final Judgment the denial of benefits to class members suffering from prostate cancer is GRANTED;

2. Plaintiffs' Motion For Equitable Relief with respect to the payment of interest is DENIED;

3. Plaintiffs' Motion for Equitable Relief respect to the payment of the full amount of retroactive disability benefits to the estates of deceased class members is GRANTED.

20

1  Defendants are therefore ORDERED to pay compensation to the estates of deceased injured

2  class members according to the same compensation formula as class members who are alive

3  at the time the VA pays the compensation due.  It is further ORDERED that:

4        a.  For each and every class member affected by this decision, defendants shall

5  promptly issue a decision setting the effective date for the award of disability or death

6  benefits in accordance with paragraph 5 of the Stip. & Order, and state the amount of

7  retroactive benefits to which the class member is entitled.  Upon each such determination,

8  defendants shall promptly provide a copy of the decision to plaintiffs' counsel and the class

9  member, as well as payment to the class member's estate.

10        b.  Plaintiffs shall be permitted to take reasonable discovery designed to obtain

11  information regarding the extent to which defendants have wrongfully denied the estates of

12  plaintiff class members retroactive benefits under the Stip. & Order, and the identity of

13  adversely affected class members.  If there are disputes regarding such discovery, the parties

14  shall meet in good faith to resolve such dispute(s).  Any remaining disputes are hereby

15  referred to a Magistrate Judge for a determination and ruling.

16

17  **IT IS SO ORDERED.**

18

19  DATED _8/12/00_

20            THELTON E. HENDERSON
          UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

*United States District Court*
*For the Northern District of California*

rbe

United States District Court
for the
Northern District of California
December 12, 2000

* * CERTIFICATE OF SERVICE * *

Case Number:3:86-cv-06160

Nehmer

   vs

US Veterans Administ

_____

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on  December 12, 2000, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Owen B. Cooper, Esq.
U S Department Of Justice
10th & Pennsylvannia Ave N W
Washington, DC  20530

Theodore C. Hirt, Esq.
US Department of Justice
Federal programs Branch
Civil Division, Room 1032
901 E Street, N.W.
Washington, DC  20044

Karen K. Richardson, Esq.
U.S. Department of Justice
Civil Division-Federal Programs Branch
901 E Street, NW
Washington, DC  20530

William F. Russo, Esq.
Vietnam Veterans of America
1224 M Street, NW
Washington, DC  20005-5183

Linda S. Peterson, Esq.
Sidley & Austin

2049 Century Park East
Ste 3500
Los Angeles, CA  90067

Barton F. Stichman, Esq.
National Veterans Legal Services Project
2001 S. Street, NW
Ste 610
Washington, DC  20009

Linda S. Peterson, Esq.
Sidley & Austin
555 West 5th St Ste 4000
Los Angeles, CA  90013-1010


Richard W. Wieking, Clerk

BY: _____
   R.B. Espinosa, Deputy Clerk