IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEVERLY NEHMER, et al.

          Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,

          Defendant.

NO. C86-6160 TEH

ORDER TO SHOW CAUSE

       This case comprises a long-standing challenge to the United States government's regulations regarding compensation of Vietnam Veterans exposed to Agent Orange. On December 1, 2005, the Court issued an Order Granting Plaintiffs' Motion for Clarification, ruling that defendant U.S. Department of Veterans Affairs ("VA") must pay retroactive benefits to veterans whose diseases have been deemed "service connected" after the original sunset date of the Agent Orange Act in 2002, and within the extended expiration of the Act which currently is set for 2015. Thus far, the only disease to be deemed service connected subsequent to 2002 is chronic lymphocytic leukemia ("CLL"). Defendant filed an appeal with the Ninth Circuit, and requested a stay from this Court.

       On April 28, 2006, the Court denied the stay and ordered the VA to make payments to veterans with CLL claims. *See* Order Denying Defendant's Motion for Stay Pending Appeal and Establishing Retroactive Benefits Claims Procedure. The Court ordered the VA to begin processing the CLL claims immediately, and to "act in good faith to use all resources at their disposal to perform the tasks [identified in the order] as quickly as possible." *Id.* In a subsequent order following a telephonic status conference, the Court reiterated that defendant "remains under court order to act with speed, diligence, and good faith," and the Court

notified the VA that "any actions to the contrary shall subject defendant to contempt proceedings and sanctions in accordance with the inherent authority of the Court." Order of August 4, 2006 at 3:26-4:1.

Through a series of subsequent telephonic and in-court status conferences and related status statements, the Court has attempted to work with the parties to establish an orderly and fair procedure to ensure reasonably prompt payment to *Nehmer* class members with CLL claims. The Court has endeavored to do so within the existing resource and personnel capacities of the VA. Most recently, the Court issued an order on March 29, 2007, requiring that defendant provide certain detailed information about the pace and progress of its efforts to process *Nehmer*-related CLL claims. The Court expressed particular concern that the pace of defendant's efforts had slowed dramatically at the end of 2006 and early 2007. The Court notified defendant in that order that the disintegration of the VA's claims process was a blatant violation of the Court's past orders and the prior representations made by defendant. *See* Order of March 29, 2007 at 7-10.

Defendant filed a response to the March 29 Order on April 10, 2007 ("VA Response"). Upon review of the VA Response, as well as plaintiffs' subsequently filed response on April 17, 2007 ("Plaintiffs' Response"), the Court has become further distressed that defendant has made a number of material representations that are inaccurate, misleading, and perhaps manipulative. The first apparent misrepresentation concerns defendant's reporting of the number of cases reviewed by its Philadelphia Resource Center ("PRC"). Throughout this process, the Court has periodically required defendant to produce data showing "the rate at which CLL claims are being processed to completion by the Philadelphia Resource Center." *See, e.g.*, Order of October 11, 2006. Defendant has responded by submitting the number of draft decisions that have been completed per month, pending final review by the central office in Washington, D.C. The Court has always had the understanding, which it has expressed repeatedly without correction by defendant, that this data showed the rate of processing claims to completion at the PRC level, and that progress toward the goal of completing all CLL claims (in both the "500 Group" and the

2

1  "Mailing Group") could be accurately measured by the number of completed draft decisions.
2  It was not until the most recent filings that the Court came to understand that the data
3  actually counts some claims multiple times.  It appears that every time the central office
4  returns a file to the PRC for correction, it is counted as a new draft decision for the PRC to
5  process.  Thus, for example, when a single claim is completed at the PRC it is counted once
6  as a completed draft decision; when it is returned and corrected, it is counted again as a
7  completed draft decision; and it may be returned even further times, being counted again and
8  again.  This appears to have occurred for several hundred draft decisions, as plaintiffs
9  explicate in detail in their response.  *See* Plaintiffs' Response at 4 & n. 1.  Thus, defendant
10 has made it appear for months that it has been making faster progress than in actuality.

11     The second problem arises from defendant's apparent failure to provide a credible
12 explanation for the severe drop in productivity at the end of 2006 and early 2007.  In
13 response to an order from the Court for an explanation about the drop in productivity,
14 defendant explained that it was due to "the holiday period, associated vacations by VA
15 employees, and the need for those employees to use excess leave before the end of the
16 government's leave year."  Def's Response to Feb. 12, 2007 Order at 2:16-19.  However,
17 defendant's own data does not appear to support this explanation.  As described in detail in
18 Plaintiffs' Response, defendant's purported reasons for the plunge in productivity actually
19 account for only a small decrease, leaving the actual reason for the dramatic decrease
20 undisclosed.  *See* Plaintiffs' Response at 5-6.  The Court is at a loss for any plausible
21 explanation, and barring one will be forced to conclude that it has been misled.

22     These two issues – the apparent double-counting of completed claims and the failed
23 explanation for plummeting productivity – cause the Court grave concern about defendant's
24 good faith and its compliance with specific and definite orders of the Court.  The Court
25 "possess[es] [the] inherent authority to initiate contempt proceedings for disobedience to [its]
26 orders." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987); *Spallone v.*
27 *United States*, 493 U.S. 265, 276 (1990).  A party may be held in civil contempt where it
28 "fail[ed] to take all reasonable steps within the party's power to comply [with a specific and

3

definite court order]." *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir.1993).

In light of the above, and good cause appearing, IT IS HEREBY ORDERED that defendant United States Department of Veterans Affairs shall appear on **July 23, 2007, at 10:00 AM,** to SHOW CAUSE why it should not be held in contempt for violation of this Court's orders of April 28, 2006, August 4, 2006, and March 29, 2007, and all related orders and directives.

**IT IS SO ORDERED.**

Dated:   06/19/07

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT