1

2

3

4

5

6            UNITED STATES DISTRICT COURT

7

8           NORTHERN DISTRICT OF CALIFORNIA

9

10  BEVERLY NEHMER, et al.,

11         Plaintiffs,           No. C 86-06160 WHA

12      v.

13  U.S. DEPARTMENT OF VETERAN     **ORDER ON MOTION**
      AFFAIRS,                     **FOR ENFORCEMENT**

14          Defendant.         **OF FINAL JUDGMENT**

15

16                  **INTRODUCTION**

17      In this certified class action resolved by consent decree thirty years ago, plaintiff veterans

18  bring a fourth motion for enforcement of the consent decree.  Defendant federal agency

19  opposes.  To the extent stated herein, plaintiffs' motion is granted.

20                    **STATEMENT**

21      Thirty-three years ago, Judge Thelton Henderson certified plaintiffs' class of all Vietnam

22  veterans and their survivors who had applied, or were eligible to apply, to the VA for

23  service-connected disability or death compensation "arising from exposure during active-duty

24  service to herbicides containing dioxin."  *Nehmer v. U.S. Veterans' Admin.*, 118 F.R.D. 113,

25  116 (N.D. Cal. Dec. 22, 1987).  Dioxin is the toxic contaminant in the defoliant known as

26  Agent Orange (because of the orange-colored stripe on its barrels) sprayed by the United States

27  Armed Forces in Vietnam to clear jungle and destroy crops during the Vietnam War.

28

United States District Court
Northern District of California

1    *See Nehmer v. United States Veterans' Administration*, 712 F. Supp. 1404, 1407 (N.D. Cal.

2    May 3, 1989) (*Nehmer I*).

3      Plaintiffs initially challenged a VA regulation promulgated under the Veterans' Dioxin

4    and Radiation Exposure Compensation Standards Act of 1984.  The Dioxin Act "dramatically

5    alter[ed] the process governing [veterans'] Agent Orange disability claims.  Rather than have

6    the VA determine in individual adjudicatory proceedings whether a particular veteran's

7    claimed disease was caused by Agent Orange exposure, the Act authorize[d] the Administrator

8    of the VA [ ] to conduct rulemaking to determine which diseases [would] be deemed service

9    connected for all diseases claimed to be caused by Agent Orange exposure."  *Id.* at 1407–08.

10   The Act applied to veterans exposed to dioxin during "service . . . in the Republic of Vietnam."

11   Pub. L. 98-542, § 5(a)(1), 98 Stat. 2725, 2727 (1984).

12     The challenged regulation provided that any veteran who had served "in the Republic of

13   Vietnam" would "be presumed to have been exposed to a herbicide containing dioxin while in

14   Vietnam." 38 C.F.R. § 3.311a(b) (1986).  But, under Regulation 311, only a single disease —

15   chloracne — was "sufficient to establish service-connection for resulting disability."  38 C.F.R.

16   § 3.311a(c).  Judge Henderson invalidated the regulation because, although Congress had

17   intended the VA to "predicate service connection upon a finding of a significant statistical

18   association between dioxin exposure and various diseases," the VA had erroneously required

19   proof that a causal relationship existed.  *Nehmer I*, 712 F.Supp. at 1420, 1423.

20     While the VA was in the process of promulgating regulations to replace the one

21   invalidated by the 1989 order, Congress enacted the Agent Orange Act of 1991.  38 U.S.C.

22   § 1116(b) (originally codified as § 316(b)).  The Agent Orange Act mandated that the VA

23   accord service-connection status to three diseases — non-Hodgkin's lymphoma, soft tissue

24   sarcomas, and chloracne — if manifested by a veteran who "served in the Republic of

25   Vietnam" during the war.  38 U.S.C. § 1116(a)(1)(B).  The pertinent implementing regulation

26   stated:

27      "Service in the Republic of Vietnam" includes service in the
   waters offshore and service in other locations, if the conditions of
28      service involved duty or visitation in the Republic of Vietnam.

United States District Court
Northern District of California

United States District Court
Northern District of California

38 C.F.R. § 3.311a (1985).  The Act also required that whenever the VA Secretary determined that a "positive association exists between" exposure to herbicides and a disease, "the Secretary shall prescribe regulations providing that a presumption of service connection is warranted for that disease" due to herbicide exposure.  38 U.S.C. § 1116(b)(1).  It did not, however, ensure that as the Secretary recognized further diseases as presumptively service-connected, any prior claims based on those diseases would be readjudicated.

Three months after the Agent Orange Act, the certified class entered into a consent decree with the VA to ensure automatic readjudication of such previously-denied claims.  The consent decree provided, in part, that "[a]s soon as a final rule is issued service connecting, based on dioxin exposure, any . . . disease in the future pursuant to the Agent Orange Act of 1991, . . . the VA shall promptly thereafter" (a) identify all claimants who previously filed a disability or death compensation claim based on such disease, (b) readjudicate that claim under the new rule, and (c) if the claim is granted, assign as the effective date the date the VA received the claim or the date the claimant became disabled or death occurred, whichever is later.  Because the consent decree turned on a veteran's eligibility for benefits under the Agent Orange Act, the decree, like the Act, applied to veterans who "served in the Republic of Vietnam" (*see* FINAL STIPULATION AND ORDER (the consent decree), Dkt. No. 141 ¶ 3).

Since agreeing to the consent decree, the VA has issued ten rules service-connecting dozens of diseases to presumed herbicide exposure in Vietnam (Decl. Devlin ¶ 2 n.1 (listing rules)).  38 C.F.R. § 3.309(e) (listing diseases).  Readjudications of hundreds of thousands of claims have resulted in billions of dollars of retroactive benefit awards that might not otherwise have been paid.  Class counsel has had to remain vigilant to ensure the government's compliance with its consent decree obligations.  On three separate occasions (four including this motion), they have had to seek enforcement of the consent decree on a class-wide basis.

Each time, Judge Henderson interpreted the consent decree in plaintiffs' favor and granted the

requested relief.  Each time, our court of appeals affirmed, most recently stating:

> What is difficult for us to comprehend is why the Department of
> Veteran Affairs, having entered into a settlement agreement and
> agreed to a consent order some 16 years ago, continues to resist its
> implementation so vigorously, as well as to resist equally
> vigorously the payment of desperately needed benefits to Vietnam
> war veterans who fought for their country and suffered grievous
> injury as a result of our government's own conduct . . . .  [O]ne
> thing is clear.  Those young Americans who risked their lives in
> their country's service and are even today suffering greatly as a
> result are deserving of better treatment from the Department of
> Veterans Affairs than they are currently receiving.  We would hope
> that this litigation will now end, that our government will now
> respect the legal obligations it undertook in the Consent Decree
> some 16 years ago, that obstructionist bureaucratic opposition will
> now cease, and that our veterans will finally receive the benefits to
> which they are morally and legally entitled.

*Nehmer v. U.S. Department of Veterans Affairs*, 494 F.3d 846, 864–65 (9th Cir. 2007).

The latest challenge concerns "blue water navy veterans," meaning, those who served

aboard a ship that was located in the territorial waters of "the Republic of Vietnam" during

the war but did not set foot on the landmass of Vietnam or serve in the inland waterways of

Vietnam (brown water navy veterans).  The VA's refusal is based on its interpretation of the

Agent Orange Act's limitation to veterans who "served in the Republic of Vietnam."  The VA

interprets this phrase as only including veterans who had boots on the ground in Vietnam and

brown water navy veterans, *not* including blue water navy veterans.

This order follows full briefing and a telephonic hearing (due to the ongoing public

health emergency).

**ANALYSIS**

Agent Orange was used extensively by the United States military in the Republic of

Vietnam between 1961 and 1971.  Military personnel began to raise questions about its toxic

effects on soldiers and sailors as early as 1967, and the first claims to the Department of

Veterans Affairs asserting conditions related to Agent Orange came in 1977.  The military,

however, denied that there were any long-lasting harmful effects on our personnel.  In 1984,

Congress passed the Dioxin Act, which directed the VA to establish a framework for granting

4

disability claims on a presumptive basis for all diseases shown to be associated with Agent Orange exposure by veterans who "serv[ed] . . . in the Republic of Vietnam." Pub. L. 98-542, § 5(a)(1), 98 Stat. 2725, 2727 (1984).

A regulation purporting to implement the Dioxin Act presumed veterans who "served in the Republic of Vietnam" were exposed to herbicides containing dioxin (like Agent Orange) but restricted the diseases sufficient to establish service-connection for a resulting disability to only a single disease — chloracne. 38 C.F.R. § 3.311a(b) & (c) (1986).

This lawsuit challenged that regulation.

Congress then enacted the Agent Orange Act of 1991, which, as discussed, mandated that the VA accord service-connection status to chloracne and two additional diseases if manifested by a veteran who "served in the Republic of Vietnam" during the Vietnam era, and required that whenever the VA Secretary determined that a "positive association exists between" exposure to herbicides and a disease, "the Secretary shall prescribe regulations providing that a presumption of service-connection is warranted for that disease" due to herbicide exposure. 38 U.S.C. §§ 1116(a)(1)(B) and 1116(b)(1).

This led to the consent decree in this case. The purpose of the consent decree was to require, as additional diseases became recognized, automatic readjudications by the VA of claims by military personnel who had served "in the Republic of Vietnam" where those claims had earlier been denied on the ground that the disease in question had not been determined to be service-connected. As discussed, while the consent decree does not use the words "Republic of Vietnam," its applicability turned on veteran eligibility for benefits under the Agent Orange Act, and so its provisions are limited, like the Act, to veterans who "served in the Republic of Vietnam." Recognizing that the list of diseases warranting a presumption of service-connection might expand as time went on, the consent decree ensured automatic readjudication of diseases subsequently determined to be presumptively service-connected. For example, if a claim was denied on the ground that the Parkinson's disease afflicting a veteran had not been connected to his or her service in Vietnam but the agency subsequently

United States District Court
Northern District of California

5

determined it presumptively service-connected, then the consent decree required the agency
to automatically go back and find the claim and readjudicate it.

Significantly, then existing statutes did not require automatic readjudications.  (Nor has
any statute since.)  The benefit of the consent decree for veterans was and remains the
requirement for automatic readjudications.  This has become an important feature of the
consent decree because the VA's list of presumptively service-connected diseases related
to dioxin exposure has since risen to thirty-seven.  38 C.F.R. § 3.309(e) (listing diseases).
In other words, many diseases previously denied by the VA as connected to "service in the
Republic of Vietnam" have now been recognized by the agency as presumptively connected
to such service.  The consent decree has served the useful purpose of requiring the agency to
automatically readjudicate those claims.

Nothing in the consent decree limited relief only to those veterans who set foot on the
landmass of Vietnam or served in the inland waterways of Vietnam, meaning nothing in the
consent decree denied relief to blue water navy veterans, *i.e.*, those sailors who served offshore
but within the territorial waters of the Republic of Vietnam.  Rather, the consent decree
mandated that "[a]s soon as a final rule is issued service connecting, based on dioxin exposure,
any . . . disease which may be service connected in the future pursuant to the Agent Orange
Act of 1991 . . . the VA shall promptly thereafter readjudicate all claims for any such
disease . . . without waiting for final rules to be issued on any other diseases" (Dkt. No. 141
¶ 3).  The purpose of the consent decree was to provide relief to all veterans entitled to the
benefits of the Dioxin Act and the Agent Orange Act, and to give all such veterans the further
benefit of automatic readjudications.

For the first eleven years of the consent decree, the VA in fact did give automatic
readjudications to any veteran who had received a Vietnam service medal, which was
"[a]warded to all members of the Armed Forces of the United States serving at any time
between July 4, 1965 and March 28, 1973, in Vietnam, its contiguous waters, or airspace,
thereover" (Decl. Spataro ¶ 9, Exh. 9).  *This included blue water navy veterans who had served*
*within the territorial waters of the Republic of Vietnam.*  In 2002, however, the agency adopted

6

an interpretive regulation excluding the blue water navy veterans from benefits under the Acts, and limiting relief to those who had had boots on the ground or had served in the inland waterways of Vietnam (brown water navy).

By the time of this interpretive regulation in 2002, the United States Court of Appeals for the Federal Circuit had acquired subject-matter jurisdiction over challenges to such regulations. So, our case sat on the sidelines and watched with interest as that challenge unfolded in the Federal Circuit.

The first case to litigate the issue was a disability claim by Jonathan Haas, who had served the U.S. Navy in the Republic of Vietnam for seven years, and another twelve years in the reserves. While in Vietnam, Haas had served on an ammunition ship and had resupplied boats and ships patrolling the coastal water of Vietnam with ammunition, food, stores, and fuel, but the VA would not deem his subsequent disability presumptively connected to his service because he had never entered the ports of Vietnam (due to the risks of explosion due to enemy fire or sabotage). The issue he raised did not concern automatic readjudication. His issue was the blue-water issue. The Federal circuit gave deference to the agency and ruled against him because he had been a sailor only off the coast. *Haas v. Peake*, 544 F.3d 1306, 1309 (Fed. Cir. 2008).

The Federal Circuit *en banc* later reversed itself, however. Alfred Procopio, Jr., served on the U.S.S. Intrepid, deployed in the waters offshore of the landmass of the Republic of Vietnam, and later sought entitlement to service-connection for diabetes mellitus and prostate cancer but was denied service-connection because he was a blue-water sailor. The Federal Circuit held that *Haas* had been wrongly decided, and that blue-water sailors were in fact within the ambit of the statute. *Procopio v. Wilkie*, 913 F.3d 1371, 1380 (Fed. Cir. 2019).

The agency now accepts *Procopio* as correctly decided. Therefore, in the judgment of this Court, the consent decree's requirement for automatic readjudications extends to all veterans covered by those Acts, including blue-water veterans.

The agency insists, however, that relief under the consent decree should be limited to those who set foot on the landmass of Vietnam and those who served on the inland waterways,

7

excluding blue-water veterans who served within the Republic of Vietnam.  The agency insists that we are interpreting a contract, *i.e.*, the consent decree, and not the statute, that the original intent of the parties must be determinative, and that the intent of the agency was to exclude blue-water veterans even though they served in the territorial waters of "the Republic of Vietnam."

This order disagrees.  *First*, the objective and reasonable intent of the consent decree was to require automatic readjudications for all persons entitled to benefits under the Acts. The Acts extended benefits to all those military personnel who had served within "the Republic of Vietnam."  The scope of that term has now been finally settled by *Procopio*, with the blessing of the agency, to include blue-water sailors.  This alone is dispositive.

*Second*, the agency itself in its first eleven years, in fact, extended the benefits of the consent decree to anyone who had received a Vietnam service medal, which included the blue-water veterans.  This practical construction of the agreement torpedoes the agency's later change of heart.  *Alabama v. North Carolina*, 560 U.S. 330, 346 (2010); *Air France v. Saks*, 470 U.S. 392, 396 (1985); *Crestview Cemetery Ass'n. v. Dieden*, 54 Cal.2d 744, 754 (1960).

The agency now says that was a decade-long mistake and that the agency should have all along denied relief under the consent decree.  Nevertheless, that was the practical construction of the parties at the time and it is completely unpersuasive that the agency years later says that its practical construction goofed.  The agency's subjective intent, moreover, is not determinative.  In construing a contract, we look to how reasonable parties in such circumstances would construe the agreement.  The intent of the contract objectively and reasonably construed was to provide automatic readjudications for all entitled to benefits under the Acts.

In June 2019, in the wake of *Procopio*, Congress enacted the Blue Water Navy Vietnam Veterans Act, which expressly provided that all diseases covered by the Agent Orange Act were connected to blue-water veterans' service in Vietnam, and provided substantial relief to the victims of the agency's misguided interpretation.  38 U.S.C. § 1116A(a).  While the 2019 Act did in fact provide relief to most veterans in question, it did not fully cover those who

8

would benefit from the consent decree, such as adult children of the veterans, and it did not require automatic readjudications. Therefore, the consent decree continues to have importance. The fact that Congress solved part of the problem in 2019 in no way undoes the consent decree. The House Report made clear that "[n]othing in [the Blue Waters Act] intends to limit the rights of *Nehmer* class members who seek relief for benefits under the *Nehmer* Consent Decree." H.R. Rep. 116-58 at 284 (2019). The fact that there are overlapping and coextensive benefits for some veterans does not erase the benefit of the consent decree for the others.

The agency contends that class counsel is guilty of laches for not having raised the issue presented in *Haas* until now. The answer is that *Procopio* very recently settled that question. Everyone then would have expected the agency to extend the benefit of the consent decree to all those veterans entitled to the benefit of the Dioxin Act and Agent Orange Act. Surprisingly, however, the agency refused to do so and took the position that the consent decree applied to a narrower class of veterans than the statutes themselves. For the reasons stated above, this was in error and class counsel promptly brought the issue to the district court once they learned of the agency's obstinance on the impact of *Procopio*.

In theory only, class counsel could have challenged the *Haas* decision in this district and then in the Ninth Circuit, but that would have been a long shot because, by 2002, the Federal Circuit had exclusive jurisdiction to review VA rules and regulations, *see* 38 U.S.C. § 502, and it is highly likely that our own court of appeals would have felt obliged to follow *Haas*. Counsel for the class acted reasonably in raising the issue only after *Procopio* had been decided in 2019.

Challenges to VA action must, today, be brought before the Federal Circuit. But this rule did not exist until 1989, two years after plaintiffs filed this lawsuit challenging a VA regulation. Reviewing the pertinent legislative history, Judge Henderson determined that Congress meant to preserve actions filed before September 1989, affirming prior circuit decisions allowing judicial review. Thus, this Court retained (and retains) jurisdiction over plaintiffs' claims. *Nehmer I*, 712 F.Supp. at 1410–11.

United States District Court
Northern District of California

**CONCLUSION**

To the extent stated herein, plaintiffs' motion is granted.  Defendant shall (1) identify, within 120 days of the date of this order, all of the *Nehmer* readjudication decisions made pursuant to the consent decree in which the VA denied compensation on the ground that the veteran was not entitled to the presumption of herbicide exposure because the veteran did not set foot on the landmass of Vietnam or serve in the inland waterways of Vietnam; (2) issue, within 240 days of the date of this order, a replacement decision that determines: (a) whether the veteran served in the territorial waters of the Republic of Vietnam during the war and, if so, (b) the amount of retroactive compensation, if any, the veteran or the veteran's survivor (or, if the veteran or survivor is deceased, the estate of the deceased veteran or survivor) is entitled under the terms of consent decree; and (3) provide class counsel, pursuant to the Privacy Protection Order (*see* Dkt. Nos. 224, 446, 447), with a copy of (a) all of the *Nehmer* readjudication decisions identified, (b) all of the replacement decisions issued, and (c) each notice letter sent to the class members and coding sheet associated with such replacement decisions.

**IT IS SO ORDERED.**

Dated:  November 5, 2020.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE