1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7

8                         NORTHERN DISTRICT OF CALIFORNIA

9

10    BEVERLY NEHMER, et al.,

11              Plaintiffs,                          No.  C 86-06160 WHA

12        v.

13    U.S. DEPARTMENT OF VETERANS            **ORDER ENFORCING JUDGMENT,**
      AFFAIRS,                               **VACATING RULE, AND**
14                                           **INSTRUCTING DEFENDANT TO**
                Defendant.                   **PUBLISH RULE IN THE FEDERAL**
15                                           **REGISTER**

16

17         The long history of this case has been stated many times and need not be repeated here.

18    *See Nehmer v. U.S. Veterans' Admin.*, 712 F.Supp. 1404 (N.D. Cal. May 3, 1989) (Judge

19    Thelton E. Henderson) (order granting summary judgment to plaintiff class, striking rule, and

20    voiding certain category of adjudications made thereunder); *Nehmer v. U.S. Veterans Admin.*,

21    32 F.Supp.2d 1175 (N.D. Cal. Feb. 11, 1999) (order interpreting and enforcing consent

22    decree), *aff'd sub nom., Nehmer v. Veterans' Admin. of Gov't of U.S.*, 284 F.3d 1158 (9th Cir.

23    2002); *Nehmer v. U.S. Dep't of Veteran Affairs*, 2020 WL 6508529 (N.D. Cal. Nov. 5, 2020)

24    (ruling that the consent decree applied to Blue Water Navy Vietnam veterans and ordering VA

25    to issue replacement decisions).

26         As relevant, in 2003, Judge Henderson issued an order clarifying that if a class member

27    died before receiving full payment of retroactive disability or death compensation after a

28

United States District Court
Northern District of California

favorable readjudication pursuant to the consent decree, the VA had to disburse the payment to the first individual or entity in existence listed below:

> (a) the class member's spouse;

> (b) the class member's children, in equal shares;

> (c) the class member's parents, in equal shares;

> (d) the class member's estate.

In 2003, the VA completed a formal rulemaking codifying the above ruling providing for distribution of accrued and unpaid retroactive compensation after a favorable readjudication of the deceased class member's claim.  Effective Dates of Benefits for Disability or Death Caused by Herbicide Exposure; Disposition of Unpaid Benefits After Death of Beneficiary, 68 Fed. Reg. 50966 (Aug. 25, 2003) (codified at 38 C.F.R. § 3.816).  The regulation included, however, a provision not provided for by any of Judge Henderson's rulings.

The instant dispute centers on the final sentence of the following provision of the regulation at 38 C.F.R. Section 3.816(f)(3) (emphasis added):

> Identifying payees.  VA shall make reasonable efforts to identify the appropriate payee(s) under paragraph (f)(1) of this section based on information in the veteran's claims file.  If further information is needed to determine whether any appropriate payee exists or whether there are any persons having equal or higher precedence than a known prospective payee, VA will request such information from a survivor or authorized representative if the claims file provides sufficient contact information.  Before releasing payment to an identified payee, VA will ask the payee to state whether there are any other survivors of the class member who may have equal or greater entitlement to payment under this section, unless the circumstances clearly indicate that such a request is unnecessary.  *If, following such efforts, VA releases the full amount of unpaid benefits to a payee, VA may not thereafter pay any portion of such benefits to any other individual, unless VA is able to recover the payment previously released.*

The final sentence of Section 3.816(f)(3) applies in the following circumstance:  Where the VA believed it had identified all eligible surviving children through the process described above, and, therefore, has disbursed the compensation to the identified children, the VA has invoked the final sentence of Section 3.816(f)(3) to deny payment to otherwise eligible, late-claiming children unless the VA is able to first recover the overpayment from the late-

2

claimer(s)' sibling(s). Plaintiffs have referred to this sentence as the "hold harmless provision."

In a June 2020 letter to counsel for the VA, plaintiffs' counsel argued that the hold harmless provision was unlawful (Dkt. No. 495-1 at 19–22). In particular, the June 2020 letter cited the following passage from the Government Accountability Office Red Book:

> Payment to the wrong person obviously does not discharge the government's obligation. If, through administrative mistake of fact or law or clerical error, a payment is made to a person not entitled to it, the government is still obligated to make payment to the proper claimant. *E.g.*, 37 Comp. Gen. 131, 133 (1957) (payment of death gratuity to erroneously designated payee). The agency should take action to recover from the first payee. 31 U.S.C. §§ 3727(c), 3528(b)(2), 3711(a)(1). However, payment to the proper claimant should not be held up pending recovery of the erroneous payment, even though this may result in a duplicative payment. Illustrative cases include 66 Comp. Gen. 617 (1987), *aff'd on reconsideration*, B-226540.2, Aug. 24, 1988; 19 Comp. Gen. 104 (1939); and B-249869, Jan. 25, 1993.

U.S. Gov't Accountability Off., GAO-08-978SP, Principles of Federal Appropriations Law, 3d ed., Vol. III, p. 14-50 (2008). Plaintiffs' letter also cited *Luckett v. Wilkie*, 2019 WL 6794789 (Vet.App. Dec. 13, 2019), for the following statement:

> Where VA makes an erroneous payment to a particular beneficiary, that payment in no way impairs its authority and obligation to pay the amount that is owed to the correct beneficiary. Whether or not the Secretary decides to seek to recoup the erroneous payment is an entirely different matter.

*Id.* at *2 (quoting *Snyder v. Principi*, 15 Vet.App. 285, 292 (2001)). The June 2020 letter also described several specific instances where the VA invoked Section 3.816(f)(3)'s hold harmless provision to deny payment to late-claiming children.

As plaintiffs recount, and the VA agrees (Br. 5; Opp. 11):

> This letter initiated productive discussions between Class Counsel and counsel for the VA. The VA ultimately paid full shares of benefits to the survivors identified in the letter after confirming their eligibility. Further, counsel for VA notified Class Counsel first on October 14, 2020, and again confirmed on February 1, 2021, that it agreed to change its policy regarding payment to late-claiming child beneficiaries.

United States District Court
Northern District of California

3

1    Meanwhile, on plaintiffs' *fourth* motion to enforce the consent decree, a November 2020

2   order ruled that the consent decree applied to Blue Water Navy Vietnam veterans, and ordered

3   the VA, *inter alia*, to:  (1) identify *Nehmer* readjudications that it had denied on the ground that

4   the veteran had not set foot in Vietnam or served in the inland waterways of that country

5   during the war; and (2) issue a replacement decision determining:  (a) whether the veteran

6   served in the territorial waters of Vietnam during the war and, if so, (b) the amount of

7   retroactive compensation, if any, due the veteran or the veteran's survivor(s) under the consent

8   decree.  *Nehmer v. U.S. Dep't of Veteran Affairs*, 2020 WL 6508529 at *6 (N.D. Cal. Nov. 5,

9   2020).  In addition, the November 2020 order required the VA to provide class counsel "with a

10  copy of (a) all of the *Nehmer* readjudication decisions identified, (b) all of the replacement

11  decisions issued, and (c) each notice letter sent to the class members and coding sheet

12  associated with such replacement decisions."  *Ibid.*

13    The VA identified more than 60,000 veterans with claims requiring a replacement

14  decision under the November 2020 order (Dkt. No. 493).  Given the large number of

15  replacement decisions the VA needed to process, the parties stipulated to extend the time for

16  the VA to complete the Blue Water Navy replacement decisions until November 2022 (*ibid.*).

17  As part of the stipulated extension of time, and pertinent to the instant dispute, the VA has

18  agreed to provide class counsel with extensive quarterly reports about the Blue Water Navy

19  readjudications, including the following information about survivor-payees:

20          For each veteran or surviving family member for whom a
            replacement decision has been issued . . . the social security
21          number of the living or deceased veteran; the VA claims file
            number; the last, first and middle name of the veteran; and the date
22          of the veteran's death, if applicable.

23  And, for each unlocated survivor-payee, the quarterly reports will include:

24          VA claims file number; social security number; veteran's first
            name; veteran's last name; claimant's name (if different from
25          veteran); undeliverable mail has been received; unable to identify a
            payee; unable to locate payee (payee identified, but no address
26          available); type of mail returned (VCAA, rating, etc.);
            veteran/claimant's phone number; attempts made to obtain valid
27          address; last known address; comments.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In an August 2021 email to counsel for the VA, plaintiffs' counsel identified another late-

2    claiming child whom the VA had denied payment on the basis that the deceased veteran's full

3    retroactive benefits had already been claimed by the veteran's four other children (*see* Frueh

4    Decl. Exh. A).  In a September 7 letter, the VA agreed to promptly pay the late-claiming child

5    his equal share of the benefits before it initiated proceedings to recoup the overpayments from

6    the other four children (*ibid.*).

7    Notwithstanding the above, plaintiffs filed this motion to enforce the judgment, the 1991

8    consent decree.  Specifically, plaintiffs seek an order to the VA requiring the VA "to

9    immediately rescind the final sentence of 38 C.F.R. Section 3.816(f)(3) and to advise all

10   federal employees involved in the veterans' claims adjudication process of this change and its

11   meaning" (Br. 8).  This order follows full briefing and a hearing.

12

13                    *                *                *

14

15   In support of its opposition to the instant motion, the VA has filed a declaration by

16   Michael J. Frueh, the principal deputy under secretary for benefits at the VA (Frueh Decl. ¶ 1).

17   The Frueh declaration describes that the VA has been in the process of a proposed rulemaking

18   addressing "a variety of issues related to veterans' exposure to herbicide," including an

19   amendment to the final sentence of Section 3.816(f)(3) that would strike it and "replace it with

20   language directing claims processors to first make payment to newly identified and eligible

21   payees and then to attempt recovery of any overpayment made to the original payees" (*id.* ¶¶ 8,

22   9).  The VA does not expect to publish the notice of proposed rulemaking until March 2022,

23   however (*id.* ¶ 9).  The Frueh declaration further states that it would be inefficient and costly to

24   require the VA to immediately issue a rule rescinding the hold harmless sentence, instead of

25   allowing the VA to rescind it as part of its larger, planned rulemaking, would be inefficient and

26   unnecessarily costly (*id.* ¶¶ 10–12).

27   At the hearing on the instant motion, however, class counsel pointed out that if a *Nehmer*

28   claims processor erroneously denied payment to a late-claiming survivor-payee under the hold

United States District Court
Northern District of California

1  harmless provision, that survivor, or his or her advocate, would be misled by the existence of

2  the provision in the CFR, not knowing that the provision is unlawful, and therefore would not

3  seek redress of the denial.

4      At the hearing, the Court instructed class counsel and counsel for the VA to meet and

5  confer about how the VA could best effectuate notice to the public of a rescission of the final

6  sentence of Section 3.816(f)(3), assuming the Court ruled for the plaintiffs.

7      Accordingly, the parties have filed a joint statement (Dkt. No. 505):

8          During their conference, the parties agreed that the most effective
           way for the VA to effectuate notice to Plaintiffs and the public in
9          the event the Court vacates the final sentence of Section
           3.816(f)(3) would be for the VA to issue a rule rescinding that final
10         sentence, based on the Court's order, and to publish that rule in the
           Federal Register.  The VA anticipates that it would need thirty
11         days from such a court order to complete its work on such a rule,
           and would urge any other federal entities involved in the process of
12         finalizing that rule to complete their work expeditiously.

13

14     This order finds a serious risk that a survivor-payee erroneously denied payment under

15  the final sentence of Section 3.816(f)(3), and his or her advocate, would be misled by the

16  extant regulation in the CFR and would not know that he or she is entitled to payment

17  notwithstanding the regulation.  Furthermore, the risk of such an unnecessary deprivation

18  outweighs the cost to the VA of issuing a rule promptly rescinding the provision, separate and

19  apart from its planned, broader rulemaking.

20     Therefore:

21     1.  The final sentence of 38 C.F.R. Section 3.816(f)(3) is **VACATED**.

22     2.  Within 30 days of this order, the VA **SHALL** issue a rule rescinding

23         that sentence and **SHALL** publish that rule in the Federal Register.

24

25     **IT IS SO ORDERED.**

26  Dated:  November 10, 2021

27                                          _____
                                           WILLIAM ALSUP
28                                         UNITED STATES DISTRICT JUDGE

6