NATIONAL VETERANS LEGAL SERVICES PROGRAM
Barton F. Stichman (DC SB 218834, *pro hac vice*)
Renee A. Burbank (CT SB 440300, *pro hac vice*)
1100 Wilson Blvd.
Suite 900
Arlington, VA 22209
Tel: 202-265-8305
Email: bart@nvlsp.org
    Renee.burbank@nvlsp.org

SIDLEY AUSTIN LLP
Sean A. Commons (SBN 217603)
Caleb J. Bowers (SBN 332189)
Brooklyn Hildebrandt (SBN 350707)
350 South Grand Avenue,
Los Angeles, California 90071
Tel: 213-896-6000
Email: scommons@sidley.com
    cbowers@sidley.com
    bhildebrandt@sidley.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| BEVERLY NEHMER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, et. al., <br><br> Defendants. | Case No. 3:86-cv-06160 (WHA) <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CY PRES DISTRIBUTION OF RESIDUE FUNDS** <br><br> Complaint Filed:  October 31, 1986 <br><br> Date:  October 23, 2024 <br> Time:  8:00 a.m. <br> Place: Courtroom 12, 19th Floor |

# **TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………………….1

ARGUMENT……………………………………………………………………………………………1

I. THE CONSENT DECREE NEED NOT CONTAIN AN EXPRESS CY PRES PROVISION FOR THIS COURT TO MAKE AN AWARD .................................................................... 2

II. THE CONSENT DECREE MANDATES THE READJUDICATION OF CLAIMS AND PAYMENT OF SUMS CERTAIN TO *NEHMER* CLASS MEMBERS ................................. 3

III. APPROPRIATIONS LIMITATIONS DO NOT CONSTRAIN PLAINTIFFS' PROPOSED CY PRES AWARD ...................................................................................................... 4

    A. Plaintiffs' Requested Cy Pres Award Would Not Circumvent Appropriations Restrictions. ..........................................................................................................5

    B. The Consent Decree Deviates from the "Existing" Process Provided in Statute. ...............7

    C. The Possibility That Additional Class Members Will Come Forward is No Reason to Avoid Cy Pres. ..........................................................................................................8

IV. ALLOWING THE VA TO RETAIN THE FUNDS WOULD BE IMPROPER ..................... 9

V. THE LEGAL SERVICES CORPORATION IS THE MOST APPROPRIATE CY PRES DESIGNEE AND WOULD FURTHER THE OBJECTIVES OF THE DIOXIN ACT TO EXPAND BENEFITS FOR *NEHMER* CLASS MEMBERS................................................ 10

CONCLUSION……………………………………………………………………………………….11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Briggs v. United States*,
   No. C 07-05760 WHA, 2012 WL 476348 (N.D. Cal. Feb. 14, 2012) ................................... 8, 9

*Cincinnati Soap Co. v. United States*,
   301 U.S. 308 (1937) .................................................................................................................. 5

*Cortes v. Nat'l Credit Adjusters, L.L.C.*,
   No. 2:16-cv-00823, 2022 WL 16725056 (E.D. Cal. Oct. 6, 2022) ........................................... 2

*Diamond Chem. Co. v. Akzo Nobel Claims, B.V.*,
   517 F.Supp. 2d 212 (D.D.C. 2007) ........................................................................................... 2

*Four in One Co., Inc. v. SK Foods, L.P.*,
   No. 2:08-cv-3017, 2021 WL 4480737 (E.D. Cal. Sept. 30, 2021) ........................................... 2

*Naschin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) ....................................................................................... 2, 5, 10

*Nehmer v. U.S. Dep't of Veterans Affs.*,
   494 F.3d 846 (9th Cir. 2007) .................................................................................................... 3

*Nehmer v. Veterans' Admin.*,
   284 F.3d 1158 (9th Cir. 2002) .................................................................................................. 8

*In re Prudential Ins. Co. of Am.*,
   962 F. Supp. 450 (D.N.J. 1997) ................................................................................................ 4

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) .................................................................................................. 5

*In re Wells Fargo Securities Litigation*,
   991 F. Supp. 1193 (N.D. Cal. 1998) ..................................................................................... 2, 3

**Statutes and Regulations**

38 U.S.C. § 1310(a) ........................................................................................................................ 1

38 U.S.C. § 5121(a) ........................................................................................................................ 8

38 C.F.R. § 3.816(f)(2) ................................................................................................................... 8

38 C.F.R. § 3.2501 .......................................................................................................................... 7

**Other Authorities**

CONG. RSCH. SERV., R42835, THE JUDGMENT FUND: HISTORY, ADMINISTRATION AND
    COMMON USAGE (March 7, 2013) ...........................................................................................6

CY PRES, Black's Law Dictionary (12th ed. 2024) ..........................................................................2

GEN. ACCT. OFF., GAO-08-978SP, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW
    (3d ed. 2008) ..............................................................................................................................6

James V. Saturno, CONG RSCH. SERV., R46497, AUTHORIZATIONS AND THE
    APPROPRIATIONS PROCESS (May 16, 2023) ................................................................................6

# INTRODUCTION

The U.S. Department of Veterans Affairs (VA) legally owes defined sums as disability and death compensation to the *Nehmer* class. The parties agree these class members cannot be located despite multi-prong efforts undertaken separately by both the VA and class counsel. The four-decades-long journey to obtain compensation for these class members and their relatives can progress no further. Sadly, due to the passage of time, class members owed these funds are now deceased or cannot be located, and no dependents or estate exists or can be located in their place. In effect, Defendants shrug their shoulders and say there is no step this Court can take to mitigate this tragedy. But it is well within this Court's authority to make a cy pres award here, and the record shows that this Court can fashion such an award to protect the interests of class members.

# ARGUMENT

Defendants' arguments boil down to an unsupported premise that cy pres is not available here due to the form of the Consent Decree, including because the amount of residue funds is supposedly undefined, and due to alleged limitations on prior appropriations prohibiting a cy pres distribution here. Both are wrong. The doctrine of cy pres as applied by the Ninth Circuit provides this Court with authority to make a cy pres distribution to enforce a Consent Decree, particularly where, as here, there is a clearly defined sum of residue funds owed to class members. And because the funds at issue are already owed to class members as disability or death compensation,[1] ordinary restrictions on appropriations do not apply here, and retention of such funds by the VA would be improper. Finally, although Defendants offer no better alternative than Plaintiffs' proposed cy pres designee, the Legal Services Corporation ("LSC") remains representative of and in the best position to meet the needs of the *Nehmer* Class in accordance with the Consent Decree and Dioxin and Agent Orange Acts.

---

[1] Although Defendants refer only to claims for disability compensation, the Consent Decree applies to both claims by veterans for disability compensation and claims by survivors for death compensation. Dkt. 141, Final Stipulation and Order, ¶ 5 (May 20, 1991) (requiring retroactive compensation for claims "for disability compensation or dependency and indemnity compensation ('DIC')." The VA pays DIC to certain survivors of veterans who die from a service-connected disability. *See* 38 U.S.C. § 1310(a).

1

**REPLY IN SUPPORT OF MOTION FOR CY PRES DISTRIBUTION**
CASE NO. 3:86-CV-06160 (WHA)

## I. THE CONSENT DECREE NEED NOT CONTAIN AN EXPRESS CY PRES PROVISION FOR THIS COURT TO MAKE AN AWARD

This Court has authority to issue a cy pres award regardless of whether there is an express cy pres provision in the Consent Decree. The doctrine of cy pres, as applied by the Ninth Circuit, does not limit a court to awarding relief only based on terms expressly agreed upon by parties. And Defendants point to no authority imposing such a limitation.[2] Rather, "[w]here, as here, the original settlement did not provide for the *cy pres* designee, nothing appears to prevent the plaintiff[] moving for such a designee in a separate motion." *Four in One Co., Inc. v. SK Foods, L.P.*, No. 2:08-cv-3017 (consolidated cases), 2021 WL 4480737 at *2 (E.D. Cal. Sept. 30, 2021) (granting plaintiffs' motion for cy pres distribution of remaining class funds, despite no provision for a cy pres grantee in the underlying settlement agreement); *see also Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 2:16-cv-00823, 2022 WL 16725056 (E.D. Cal. Oct. 6, 2022) (granting plaintiffs' motion for cy pres distribution of residual funds, despite no provision for a cy pres grantee in the underlying settlement agreement); *see also Diamond Chem. Co. v. Akzo Nobel Claims, B.V.,* 517 F.Supp. 2d 212, 220 (D.D.C. 2007) (holding that the equities favored a cy pres award of residual funds over reversion to defendant in response to cy pres motion filed years after a settlement agreement containing no provision for cy pres); *see also* Dkt 533, Defs. Memo. In Opp., P. 19 (Sept. 17, 2024) (acknowledging this Court's prior exercise of discretion in *In re Wells Fargo Securities Litigation*, 991 F. Supp. 1193, 1194 (N.D. Cal. 1998)).

The very purpose of the cy pres doctrine, in the context of class action settlements, is to allow the court to enforce the instrument "as near as possible" to "put the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." *Naschin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (internal citations omitted); *see also* CY PRES, Black's Law Dictionary (12th ed. 2024). Here, in large part because this litigation and the VA's periodic readjudications have been ongoing for decades, it has become impossible for the VA to pay

---

[2] The Defendants also assert that the Motion for Cy Pres Distribution is "[a]t bottom" a motion to modify the Consent Decree to add a cy pres provision. Dkt 533, Defs. Memo. In Opp., P. 8 (Sept. 17, 2024). Plaintiffs do not oppose the Court's discretion to instead modify the Consent Decree if the Court determines such a step is necessary, although modification is unnecessary for the Court to exercise its discretion to award a cy pres distribution here.

the amount it owes to certain class members because no living beneficiary exists or can be found. A cy pres award is entirely appropriate to fulfill the Consent Decree "as near as possible." Thus, this Court maintains "its equitable power of cy pres to distribute a settlement fund residue to an alternate recipient." *In re Wells Fargo*, 991 F. Supp. at 1194.

## II. THE CONSENT DECREE MANDATES THE READJUDICATION OF CLAIMS AND PAYMENT OF SUMS CERTAIN TO *NEHMER* CLASS MEMBERS

Defendants next contend there is no "fund" capable of being distributed. But the Consent Decree has resulted in a sum certain owed to *Nehmer* class members that can be calculated down to the penny. The certainty is more than sufficient for a cy pres distribution. The Consent Decree did not explicitly specify a "common fund" amount when it was entered in 1991 because the extent of wrongly denied claims was not and could not be known at that time.[3] Instead, the Consent Decree "provides that as soon as the VA issues new determinations [under the Agent Orange Act of 1991] designating particular diseases as 'service-connected,' it must readjudicate the claims of veterans suffering from them if their previously filed claims were denied or are still pending, and must then pay them retroactive benefits." *Nehmer v. U.S. Dep't of Veterans Affs.,* 494 F.3d 846, 849 (9th Cir. 2007). The formula for calculating the amount of retroactive benefits is set forth in ¶ 5 of the Consent Decree. Thus, the Consent Decree mandated automatic readjudication (i.e., correction) of previously denied disability and death compensation claims. This mandate provided for future sums certain upon identification of class members and adjudication of claims. In other words, Defendants accepted liability for readjudications of a defined set of claims by a defined group of individuals and their beneficiaries. Therefore, while "atypical" given the nature of the VA's unlawful acts in relation to other types of class action settlements, the Consent Decree nevertheless resulted in an

---

[3] As Defendants acknowledge, the final amount was impossible to determine in 1991. The parties entered into the Consent Decree as the result of Plaintiffs' Emergency Motion for Enforcement and Supplementation of Prior Orders, which was brought after Defendants refused to complete the rulemaking required by the 1984 Dioxin Act and pay retroactive compensation to *Nehmer* class members based on diseases found to be associated with herbicides containing dioxin. The trigger for the retroactive compensation provisions of the May 1991 Consent Decree occurred whenever a "final rule is issued service connecting, based on dioxin exposure, any … disease which may be service connected *in the future* pursuant to the [February 1991] Agent Orange Act." Dkt. 141, Final Stipulation and Order, ¶¶ 3, 5 (May 20, 1991) (emphasis added). Whenever this trigger occurred, the VA would readjudicate *Nehmer* claims and properly determine the amounts of retroactive compensation owed to class members.

1  obligation indistinguishable in practice from a "common fund." *See, e.g.*, *In re Prudential Ins. Co.*
2  *of Am.*, 962 F. Supp. 450 (D.N.J. 1997), *aff'd in part* (class certification and settlement) *and vacated*
3  *and remanded in part* (attorneys' fees), 148 F.3d 283 (3d Cir. 1998).

4  The sum certain owed as a fund to certain *Nehmer* class members is both knowable and
5  known. The VA has already ascertained it owes a sum certain to the individuals in question, and
6  there is no dispute about that amount owed. *See* Dkt 525, Pls. Motion for Cy Pres Distribution, P. 7
7  (Aug. 13, 2024). As of June 27, 2024, there is a residual fund of unpaid compensation for 869
8  unique *Nehmer* class members to whom the funds owed to them cannot be distributed or claimed
9  because each is deceased, leaving behind no direct family or estate. And, there is a residual fund for
10 268 unique *Nehmer* class members to whom the funds owed to them cannot be distributed or
11 claimed because they cannot be located. As Defendants concede, the VA is able to "calculate the
12 actual amount" it owes to each group. Def. Opp. at 7. Class counsel have estimated that the
13 residual, unclaimed funds total at least $63.1 million that this Court now should distribute in a
14 manner that will benefit the "next best" class of beneficiaries to meet the objectives of the Dioxin
15 and Agent Orange Acts. *See* Dkt 525, Pls. Motion for Cy Pres Distribution, PP. 7–9 (Aug. 13,
16 2024).

17 **III.  APPROPRIATIONS LIMITATIONS DO NOT CONSTRAIN PLAINTIFFS' PROPOSED CY PRES AWARD**
18

19 The VA already owes to class members the funds that Plaintiffs seek for distribution via cy
20 pres. In arguing that the rules concerning legislative appropriations restrict a cy pres award here,
21 Defendants misconstrue the question. The VA has already determined that funds are owed to each
22 class member, as the necessary adjudication to determine individual rights to compensation has
23 already occurred. The correct question, therefore, is: Provided that the veteran or appropriate payee
24 owed compensation is unavailable to receive it, who is the appropriate recipient of those funds on
25 behalf of the class member? In effect, the question is how best to identify an alternate payee to the
26 class member. The law of cy pres dictates the answer to this question as described above.
27 Defendants' arguments regarding appropriations law are inapposite here.
28

**A. Plaintiffs' Requested Cy Pres Award Would Not Circumvent Appropriations Restrictions.**

Because the requested cy pres funds comprise individual awards of disability and death benefits that are legally owed to an identified class member, applying cy pres in this case would neither circumvent an "express statutory restriction" nor "modify existing statutory prescriptions" as Defendants argue is cause for concern. Dkt 533, Defs. Memo. in Opp., p. 15 (Sept. 17, 2024). Courts have authority to distribute "unclaimed or non-distributable" funds to the "next best" class of beneficiaries in response to a motion for cy pres distribution. *See Naschin v. AOL,* 663 F.3d at 1036. There is no risk here that cy pres would "subject defendants to greater liability or alter their substantive rights" in the manner that the court in *Six Mexican Workers* considered, when it faced the prospect of "gross damages by treating unsubstantiated claims of class members [in a manner that] collectively significantly alters substantive rights…." *See* Dkt 533, Defs. Memo. In Opp., p. 16 (Sept. 17, 2024); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). Here, the claims are not "unsubstantiated," but rather, have already been finally adjudicated. Put another way, both the class members and the rights of those class members are well defined in relation to Defendants, meaning that Defendants' obligations are equally well defined. Indeed, the "VA accepts for purposes of argument Plaintiffs' estimate that the aggregate amount of retroactive benefits owed to these individuals is $63.1 million" (reserving the right to calculate the precise amount depending on the Court's ruling). Dkt 533, Defs. Memo. in Opp., p. 7 (Sept. 17, 2024).[4] This is a clearly defined sum, and the VA agrees it already owes this compensation to class members.

The provisions of appropriations law that the VA cites likewise do not bar a cy pres award based on amounts already owed to persons in the class. The Appropriations Clause is "intended as a restriction upon the disbursing authority of the Executive department," and "means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937). Legislative appropriations such as

---

[4] Defendants also argue that a cy pres award here would fall outside the Court's authority because there is no defined amount of "residual" funds. But Defendants do not cite authority for this assertion and, as discussed, there is a defined sum of unclaimed funds owed to class members.

1  those cited in the Opposition merely provide the government with budget authority to make
2  payments. *See* Dkt. 533, Defs. Memo. in Opp., p. 5 (Sept. 17, 2024); *see also* James V. Saturno,
3  CONG RSCH. SERV., R46497, AUTHORIZATIONS AND THE APPROPRIATIONS PROCESS, at 1 (May 16,
4  2023) (describing the difference between a federal authorization act and an appropriations act),
5  *available at* https://crsreports.congress.gov/product/pdf/R/R46497.  And, Court-ordered relief does
6  not circumvent such appropriations restrictions; there is no request here for the Court to order the
7  VA to "effect payment of Treasury funds" in an extra-statutory manner.[5]  As Defendants helpfully
8  point out, their referenced appropriation is available until expended.  Defendants cite no support for
9  their assertion that the Court's equitable power is limited in this situation where Congress has
10 authorized the payment of such funds, such funds remain available for expenditure, and such funds
11 are *owed* under a decades-old settlement agreement entered into by Defendants.

12 Once a final readjudication has been made in accordance with the Consent Decree, a class
13 member is owed funds and those funds are fully the veteran's or payee's to use at their discretion,
14 and Defendants have no right to impose limitations on how such funds are spent.  As Defendants
15 acknowledge, the VA's rating schedule for providing service-connected disability compensation "is
16 intended to reflect 'reductions in earning capacity from specific injuries or combination of injuries.'"
17 Dkt 533, Defs. Memo. In Opp., P. 19 (Sept. 17, 2024).  This compensation is made based on the
18 veteran's service-connected impairment, in recognition that the veteran has lost earning capacity and
19 made sacrifices for which compensation is now owed.  Plainly, the VA could not otherwise dictate
20 how a veteran or payee uses disability or death compensation owed by the VA, or not use it, for any

---

[5] Congress's prior appropriations to the VA do not limit this Court's power to enforce the Consent Decree by ordering the VA to pay the amount it owes to class members in a cy pres award.  It is well established that courts may order appropriate relief against the government when sovereign immunity for the suit has been waived, regardless of a specific appropriation for the relief the court orders.  *See* U.S. GEN. ACCT. OFF., GAO-08-978SP, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW ("GAO Red Book"), (3d ed. 2008) at 14–18.  CONG. RSCH. SERV., R42835, THE JUDGMENT FUND: HISTORY, ADMINISTRATION AND COMMON USAGE, at 2, n.11 (March 7, 2013) ("The Judgment Fund") (citing Customs Service—Wrongful Acts of Employees, 17 Comp. Gen. 931, A-92313, May 12, 1938, for the proposition "that the absence of appropriated funds does not imply the absence of a right of action").  *See generally* GAO Red Book at Ch. 14 (describing the many sources of authority to pay judicial and administratively settled claims); CONG. RSCH. SERV., The Judgment Fund, at 6 (explaining, for example, that if a court orders payment and the agency has already expended the money elsewhere, "the agency would have to seek an additional appropriation from Congress").

6
**REPLY IN SUPPORT OF MOTION FOR CY PRES DISTRIBUTION**
CASE NO. 3:86-CV-06160 (WHA)

lawful purpose.  Defendants likewise cannot dictate the purpose for which the funds are used here.

### B. The Consent Decree Deviates from the "Existing" Process Provided in Statute.

Defendants argue that "the automatic readjudications for class members" provided by the Consent Decree are "carried out by the VA as part of the agency's general statutory authority to pay benefits" and the "Consent Decree does not establish a separate administrative process for readjudicating these claims." Def. Opp. at 4.  But this is not so.  As Defendants later concede, the process for readjudicating prior final VA decisions denying benefits involves a host of "special extra-statutory rules." Def. Opp. at 6.

A fundamental premise of the Consent Decree is that the parties agreed to a special process intended to correct the VA's past failures to compensate injured class members.  Various provisions in the Consent Decree memorialize how the framework provided in the Consent Decree differs from the standard statutory process for non-class members.

For example, under one key provision that the VA agreed to in the Consent Decree, *automatic* readjudication of claims is required that would not otherwise occur by statute.  Dkt. 141, Final Stipulation and Order, ¶ 3 (May 20, 1991) ("As soon as a final rule is issued service connecting, based on dioxin exposure … the VA shall promptly thereafter readjudicate all claims for any such disease…."); *see also* Dkt. 492, Court Order, P. 6 (Nov. 5, 2020) ("The benefit of the consent decree for veterans was and remains the requirement for automatic readjudications.").  The automatic readjudication of claims is a special feature of the Consent Decree, where a veteran would otherwise need to submit paperwork to the VA for consideration under the same circumstances. *Compare* 38 C.F.R. § 3.2501 (requiring veterans wishing to make a "supplemental claim" to submit a complete application on a specified form and to comply with evidentiary requirements).  Another example is that survivors of veteran-owed compensation are not required to apply to the VA for retroactive benefits following a *Nehmer* readjudication, whereas they would otherwise be statutorily required to apply to the VA before any monies would be owed.  Instead, when a *Nehmer* readjudication occurs, the VA "will pay the amount to an identified payee … without requiring an application from the payee." 38 C.F.R. § 3.816(f)(2).

Another unique provision in the Consent Decree is that if the prior claim is granted upon

7

1  readjudication, special, extra-statutory effective date rules apply.  By statute, the effective date for an
2  award of benefits made pursuant to a newly recognized disease associated with dioxin exposure
3  cannot be earlier than the effective date of the regulation providing service connection to the disease
4  based on herbicide exposure.  38 U.S.C. § 5110(g).  Under the unique provisions of ¶ 5 of the
5  Consent Decree, however, the effective date of an award of benefits upon readjudication may be
6  years earlier—on the date the VA received the prior claim that was denied because the VA did not
7  then recognize the disease as related to dioxin exposure.  Indeed, the reason the VA has paid
8  hundreds of thousands of *Nehmer* class members an aggregate of more than $4.5 billion in
9  retroactive compensation is directly attributable to the extra-statutory provisions in the Consent
10 Decree.  *See* ECF 460-1, Spataro Decl., ¶ 12; ECF 516-1, Venuti Decl., ¶ 4.

11         Finally, by statute, if a veteran dies before the VA grants a disability claim, the VA is
12 generally prohibited from paying the accrued benefits awarded to the deceased veteran to the
13 veteran's adult children or to the veteran's estate.  38 U.S.C. § 5121(a).  As this Court and the Ninth
14 Circuit have held, the readjudication provisions of the Consent Decree provide otherwise for *Nehmer*
15 class members and their survivors.  *See Nehmer v. Veterans' Admin.,* 284 F.3d 1158, 1162 (9th Cir.
16 2002).

### C. The Possibility That Additional Class Members Will Come Forward is No Reason to Avoid Cy Pres.

18         Last, Defendants reference the remote possibility an unlocated class member might come
19 forward to claim funds.  Defendants offer no reason to believe such an event would occur following
20 the robust efforts of both the VA and NVLSP to locate eligible payees and the passage of time.
21 Roughly two-thirds of class members whose compensation is at issue are already known to be
22 deceased with no living survivor or estate that can be paid.  Defendants also cite no authority for the
23 proposition that such speculation bars the Court's equitable authority to issue a cy pres award for the
24 entire class.  When this Court was faced with a similar situation in *Briggs v. United States*, No. C 07-
25 05760 WHA, 2012 WL 476348 (N.D. Cal. Feb. 14, 2012), the Court nevertheless granted a cy pres
26 award after "[f]inding that reasonable … efforts have been made … to find unidentified class
27 members.  We have now reached the point of diminishing returns." *Id*. at *8.  The same result
28 should occur here.  The Venuti and Becnel declarations submitted in support of the cy pres motion

8
**REPLY IN SUPPORT OF MOTION FOR CY PRES DISTRIBUTION**
CASE NO. 3:CV-86-06160 (WHA)

1  demonstrate that after the VA unsuccessfully expended its own efforts to locate those entitled to the
2  retroactive compensation of the 1,137 class members at issue here, class counsel supplemented VA's
3  efforts with the aid of professional private search firms.  *See* Dkt. 525-2, Declaration of Alessandra
4  Venuti, at ¶ j and Dkt. 525-1, Declaration of Philip Becnel, at ¶ 5.  The "point of diminishing
5  returns" has already been passed.

6        If the Court believes otherwise, Plaintiffs are amenable to the Court temporarily withholding
7  a small percentage of cy pres funds to foreclose the theoretical possibility of the VA paying twice for
8  the same claim by, for example, allowing a seven-month period for VA to locate and pay the funds
9  owed to any of the unlocated class members, consistent with this Court's decision in *Briggs*.  *See,*
10 *e.g.*, *Briggs v. United States*, 2012 WL 476348 at *3 (ordering a cy pres distribution that would
11 honor future requests for distribution by unpaid class members for a limited period of seven months).

12       Thus, the Court's issuance of a cy pres award in this instance would not deprive an existing,
13 but unlocated, class member from claiming benefits long past due.

14 **IV.  ALLOWING THE VA TO RETAIN THE FUNDS WOULD BE IMPROPER**

15       As discussed in Section I and Section II, the funds here are currently owed to class members
16 and, accordingly, should be distributed via cy pres to the "next best" class of beneficiaries.
17 Defendants misconstrue Plaintiffs' argument as assuming the funds at issue could never return to the
18 U.S. Treasury.  Dkt 533, Defs. Memo. in Opp., p. 23 (Sept. 17, 2024).  None of Plaintiffs' arguments
19 rest on such an assumption.  The point is that allowing the VA to retain the unclaimed funds here is
20 no different than the type of reversion that warrants cy pres relief.

21       Defendants further showcase why the funds here *should* be directed toward an appropriate
22 purpose rather than allowed to reside with the VA.  Defendants attempt to construe class members'
23 current positions as no different than the occasional mishap that is suffered in the administration of a
24 large benefits program: the VA explicitly provides its view that the failure of class members to
25 receive benefits is the "unfortunate, but to some degree unavoidable outcome" of readjudicating past
26 decisions.  Dkt 533, Defs. Memo. in Opp., p. 2 (Sept. 17, 2024).  As this Court is aware, Plaintiffs
27 have repeatedly come to this Court for nearly four decades, with success, seeking to remedy the
28 VA's unlawful actions toward class members and to obtain for class members the compensation they

1  have earned based on their sacrifices in service.  Far from being an "unfortunate" result of program
2  administration, the fact that many class members are unavailable to receive their benefits today—
3  based on their death or other reasons—is the direct result of the VA's actions and inactions over
4  many years.  Undoubtedly, if the VA had timely issued to class members the compensation owed,
5  without this Court needing to intervene time and again, this motion would not have been necessary.
6  Although many class members are unlocatable today, there are many organizations that
7  operate to benefit class members' interests.  The unclaimed funds should be directed to these
8  organizations rather than allowed to reside with the VA.

9 **V.    THE LEGAL SERVICES CORPORATION IS THE MOST APPROPRIATE CY PRES DESIGNEE AND WOULD FURTHER THE OBJECTIVES OF THE DIOXIN**
10 **ACT TO EXPAND BENEFITS FOR *NEHMER* CLASS MEMBERS**

11  Plaintiffs reiterate here their prior support for the Legal Services Corporation (LSC) as an
12  appropriate cy pres designee, but must correct Defendants' mischaracterization of LSC.  Notably,
13  class counsel has no conflict with LSC as a cy pres designee.  If the Court has concerns, Plaintiffs
14  welcome the opportunity to fashion a distribution that limits or eliminates any potential concern.
15  Second, although Defendants border on attacking the integrity of LSC as a designee, they offer no
16  alternative.  Plaintiffs have a singular objective—to distribute the owed *Nehmer* class funds in a
17  manner consistent with the Consent Decree and Dioxin and Agent Orange Acts.  Plaintiffs have been
18  and remain open to the Court's direction in fashioning such an award, but they believe their selection
19  of LSC is a highly appropriate designee based on LSC's mission and record.
20  Awarding LSC the amounts owed to *Nehmer* class members would serve the objectives of
21  the Dioxin Act, target the *Nehmer* class members, and provide reasonable certainty that *Nehmer*
22  class members or the "next best" class of beneficiaries will be benefited.  *See Naschin*, 663 F.3d at
23  1040.  Defendants are wrong in arguing that the defined activities for LSC grantees listed in
24  Appendix A to the cy pres motion "have nothing to do with compensation for service-connected
25  disabilities" and are "not an approximation of, let alone a replacement for, monetary compensation
26  for the disabilities incurred…." Def. Opp. at 18.  As Defendants acknowledge, the purpose of VA
27  disability compensation is to offset "reductions in [the veteran's] earning capacity from specific
28  injuries." *Id.* at 19.  Providing a class member with a free attorney for representation on matters that

impact a veteran's financial status (such as debt collection, social security benefits, and VA benefits) can also offset reductions in earning capacity and serve as the "next best" alternative for the class. Plaintiffs stand ready to work with the Court and Defendants to discuss appropriate restrictions or parameters and ensure any cy pres distribution to LSC is consistent with any other restrictions or parameters the Court deems necessary in its discretion in this matter of equity.

## CONCLUSION

For the foregoing reasons, this Court should grant the instant motion and order the unclaimed class funds be directed to LSC, and order LSC to use these funds to make grants through a competitive process to non-profit organizations to perform specified services without cost to benefit individual class members and certain of their surviving family members.

Dated: October 1, 2024

Respectfully Submitted,

By: */s/ Sean A. Commons*
    Sean A. Commons

    Barton F. Stichman

SIDLEY AUSTIN LLP
Sean A. Commons (SBN 217603)
Caleb J. Bowers (SBN 332189)
Brooklyn Hildebrandt (SBN 350707)
350 South Grand Avenue
Los Angeles, CA 90071
Tel: 213-896-6000
Email: scommons@sidley.com
       cbowers@sidley.com
       bhildebrandt@sidley.com

NATIONAL VETERANS LEGAL SERVICES PROGRAM
Barton F. Stichman (DC SB 218834, *pro hac vice*)
Renee A. Burbank (CT SB 440300, *pro hac vice*)
1100 Wilson Blvd., Suite 900
Arlington, VA 22209
Tel: 202-265-8305
Email: bart@nvlsp.org

Renee.burbank@nvlsp.org

*Attorneys for Plaintiffs*