UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEVERLY NEHMER, et al.,

    Plaintiffs,

  v.

U.S. DEPARTMENT OF VETERANS AFFAIRS,

    Defendant.

No. C 86-06160 WHA

**ORDER RE CY PRES AWARD**

# INTRODUCTION

In this action settled decades ago, plaintiffs ask the district court to order *cy pres* awards where payments are due under the consent decree but no class member can be found. This order holds that no such *cy pres* relief is available under the decree, any statute, or caselaw.

# STATEMENT

During the Vietnam War, our military sprayed Agent Orange and other toxic herbicides on dense jungles — defoliating trees and harming service members. After the war, Congress passed the Dioxin Act of 1984.[1] It directed the Department of Veterans Affairs to develop a framework for granting disability claims to veterans suffering dioxin-related disabilities. The VA's implementing regulations, however, identified only one disease as presumptively caused by dioxin. So, plaintiff class members challenged defendant VA in the instant suit. They

---

[1] Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub. L. 98–542 (1984), 98 Stat. 2725.

argued that more diseases were caused by dioxin. *See Nehmer v. U.S. Veterans' Admin.*, 712 F. Supp. 1404, 1420 (N.D. Cal. 1989) (Judge Thelton Henderson).

Nearly as soon as these Vietnam War Veterans filed suit, however, Congress passed the Agent Orange Act of 1991, which directed the VA to identify still more diseases presumptively caused during their service.[2] So, the parties agreed to settle our case in 1991. The resulting consent decree required claims to be automatically reopened if they turned on diseases the VA had earlier rejected but later recognized as service related (Dkt. No. 141 (final stip.); *see* Dkt. No. 163 (ongoing enforcement)).

Since the settlement, newly recognized diseases have prompted *Nehmer* readjudications and more than $4.5 billion in retroactive payments (Dkt. No. 525-2 ("Venuti Decl.") ¶ (c)). For example, in 2010, the VA recognized three more diseases as service related, prompting readjudications for 160,000 veterans. And, in 2021, the VA recognized another three diseases, prompting another 70,000 readjudications (*id.* ¶¶ (c), (e)). These readjudications are uniquely required by the consent decree but otherwise largely performed by the VA's ordinary claims processes. And, once the amounts due are determined, the payments are funded by Congress's ordinary appropriations processes, typically in annual lump sums covering many programs.[3] Readjudications can be completed based on prior records (which veterans may supplement).

Notably, the consent decree does not include a time limit sunsetting the opportunity to file claims, nor for sunsetting the VA's obligation to readjudicate such claims. These obligations continue even after the veteran's death. *Nehmer v. U.S. Dep't of Veterans Affs.*, 494 F.3d 846, 863–64 & n.8 (9th Cir. 2007) (affirming Dkt. No. 354); *Nehmer v. U.S. Veterans' Admin.*, 284 F.3d 1158, 1161–63 (9th Cir. 2002) (affirming Dkt. No. 269).

This presents our problem: What to do if the VA determines a Vietnam War Veteran is owed funds but that veteran cannot be found or has died? Under preexisting statutory authority

---

[2] Agent Orange Act of 1991, Pub. L. No. 102-4, 105 Stat. 11 (codified at 38 U.S.C. § 1116(b)).
[3] *E.g.*, Consolidated Appropriations Act of 2024, Pub. L. No. 118-42, div. A, tit. 2, 138 Stat. 25, 39 (appropriating lump sum "[f]or the payment of compensation benefits to or on behalf of veterans . . . as authorized by section 107 and chapters 11, 13, 18, 51, 53, 55, and 61 of title 38, United States Code," among other beneficiaries pursuant to other authorities listed).

2

related to veterans' claims, if a veteran eligible to receive funding "disappears," the VA may pay the "veteran's spouse, children, and parents" instead. 38 U.S.C. § 1158. Under the consent decree, the VA is further authorized to pay the Vietnam War Veteran's estate as a final option. 38 C.F.R. § 3.816(f)(1) (codifying past orders affirmed by our court of appeals).

The instant motion arises because class counsel did not find an eligible payee for 1,137 deceased Vietnam War Veterans whose cases have been readjudicated by the VA in their favor. Two groups are at issue. *First*, of that total, 268 veterans have eligible survivors whom counsel identified but could not locate despite some effort. That effort included employing private investigators to search public records, commercial databases, and social media — and making phone calls. That effort did not include, it seems, posting ads. *Second*, the remaining 869 veterans lack eligible survivors or a still-open estate (Venuti Decl. ¶¶ (u), (v)). The amount owed these 1,137 veterans totals $63 million, or about $55,000 each (*id.* ¶ (y); *see also* Dkt. No. 525-1 (investigator's summary)).

So, class counsel now seeks to allocate these funds through a *cy pres* award. Proposed awardee Legal Services Corporation would use it to oversee a grant program funding still other legal services organizations supporting veterans' interests (including for housing, employment, or other issues). But the VA argues that the settlement did not provide for *cy pres* distribution, that these services are too attenuated from Vietnam War Veterans' interests to merit a *cy pres* distribution in any case, and that the way Congress appropriated these funds forecloses paying any recipient not recognized by the consent decree. Class counsel answers that the VA really wants to repurpose these funds for its favorite uses. But Congress has commanded that the funding must "remain available until expended" for the instructed uses (Opp. 13, 15, 23).[4] Indeed, the VA is concerned that if funding is directed to the Legal Services Corporation, then it will not be available should a Vietnam War Veteran's eligible survivor appear.

At our oral argument, the undersigned requested that each side brief the possibility of reopening veterans' closed estates or otherwise distributing funding through veterans' estates.

---

[4] *See, e.g.*, Consolidated Appropriations Act of 2024, *supra* note 3, at 39.

3

Counsel on both sides were to survey the laws of the highly populated states of California, Texas, Florida, New York, and Illinois. Their briefing is helpful. Yes, states disfavor reopening estates. And, some make the going tough (Supp. Br. 2). But both sides here agree that each jurisdiction provides for reopening estates or otherwise directs what to do with newly discovered funds still owed to a now-closed estate, as below.

So, this order now considers the motion to direct a *cy pres* award, and what the consent decree requires.

## ANALYSIS

Paying any amounts owed to deceased Vietnam War Veterans to their eligible survivors instead and then to their estates is the default choice required by the consent decree. Class counsel proposes the alternative of paying those amounts to another awardee by invoking "*cy pres comme possible* (or 'as near as possible'), [ ] an equitable doctrine that originated in trusts and estates law as a way to effectuate the testator's intent." *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1111 (9th Cir. 2021) (quotation omitted). Any *cy pres* distribution must "account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). A district court makes any necessary findings of fact before exercising discretion to decide a *cy pres* distribution (or not). *Id.* at 1038. Notably, class counsel cites no decision that would allow unclaimed funds to go to a *cy pres* recipient in a settlement with the United States.

Here, two sets of purportedly unclaimed funds remain. This order takes each in turn.

*First*, for 268 deceased veterans, we are told eligible survivors likely exist but have not been located. The consent decree and other implementing authorities make clear in these circumstances that a survivor must be sought using reasonable efforts. After reviewing the record, this order finds that the limits of reasonable efforts have not yet been reached. Class counsel contends the "'point of diminished returns' has already been passed" (Reply 9). But the funds at issue average $55,000 per veteran. This amount warrants repeating the described

efforts more than once, and newly placing ads. Only once the limit of reasonable efforts has been reached would the next point apply.

*Second*, for 869 deceased veterans, we are told no eligible survivor exists. In these cases, it seems, class counsel pinned down that each veteran's spouse, child(ren), and parents have all passed away (or that the veteran had no spouse or child) (*e.g.*, Venuti Decl. Exh. 3). The required course in such circumstances is to direct the funding to "[t]he class member's estate." That brings us to the question raised at our hearing.

The parties' supplemental briefing confirms that where a class member's estate is "closed," it can often be "reopened." And, the briefing further shows that the estate may not need to be reopened at all. Because class counsel has not attempted to pay these Vietnam War Veterans' estates, we have not reached the point where no payee is available under the consent decree.

Opposing this conclusion, class counsel makes several points. Class counsel initially contends that reopening estates will be costly. But reopening estates may not be necessary in all cases. A commonality across several states is that an estate administrator or state officer is initially tasked with seeking beneficiaries in lieu of reopening or in order to reopen an estate. What does "in lieu of" look like? In California, funds may sometimes be paid to an estate's specified or residual beneficiaries without reopening the estate at all (Supp. Br. 5–6). Such occurrences present an initial possibility: The mere effort to pay each veterans' estate may result in locating a survivor eligible for direct payment under the consent decree or the estate — without needing to reopen the estate. Class counsel further contends that estate administrators and state officers will fare no better than counsel at finding beneficiaries (*id.* at 2). Maybe so. But even if the new searchers cannot find the beneficiaries class counsel sought, they might find those other beneficiaries specified by veterans' last testaments or else states' intestacy laws. Costs may be lower than counsel expects for another reason, too. Every state surveyed provides abbreviated processes for distributing new funds to "small estates." The funds at issue here may qualify.

This order does not require reopening estates where wholly unreasonable. Rather, this order finds that reopening estates will not always be required. And, where required, it may be reasonable. So, more work must be done. And, until paid to veterans, their families, or their estates, the unclaimed funds must remain in place.

*       *       *

*Finally*, the consent decree does not authorize a *cy pres* award. Nor does any statute or caselaw. This is not a securities or consumer class action with unclaimed funds. This is a suit against the United States. The district court can order *cy pres* relief only if authorized by the consent decree, which does not authorize such relief. To do so would, in effect, be ordering Congress to appropriate money to the *cy pres* nominee, a power federal courts do not have. The funds in question must remain where they are, at the ready, to be paid to the proper claimants. Counsel must redouble their efforts.

## CONCLUSION

Plaintiffs' motion (Dkt. No. 525) is **DENIED.**

**IT IS SO ORDERED.**

Dated: May 20, 2025.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE